SARAH E. SHAW *vs.* BOSTON & WORCESTER RAILROAD COR-
PORATION.

In an action brought by a wife, after the death of her husband, against a railroad corporation, for injuries occasioned to her by their locomotive engine, while travelling in the highway with her husband in a vehicle driven by her, his declarations, made in her absence, as to the cause and circumstances of the accident, and his previous knowledge of the disposition of the horse, and his statements showing that knowledge, are inadmissible in evidence for the defendants.

In an action against a railroad corporation for injuries occasioned by their locomotive engine to a traveller in the highway at a place where the county commissioners had authorized the corporation, upon certain conditions, to cross upon a level, the record ot the county commissioners, stating that in their opinion no flagman at the crossing was necessary, is not competent evidence of due care on the part of the corporation.

Shaw *v.* Boston and Worcester Railroad Corporation.

In an action against a railroad corporation for injuries sustained by collision with their loco motive engine at a railroad crossing, the plaintiff contended that the defendants had been guilty of negligence in omitting to have a flagman there to give notice of the approach of the train; the jury were instructed " that it was the duty of the plaintiff to satisfy the jury that this was a necessary, reasonable and proper precaution, in the exercise of ordi nary care on their part, at the place, time and under the circumstances proved at the time of the accident; and that, although the defendants had complied with all the requirements of the statutes, this would not exempt them from liability, if they had omitted other pre-cautions, which, in the exercise of due and ordinary care, they were bound to take, at the time, place and under the circumstances of the accident, the omission of which proper precautions was the efficient cause of the injury to the plaintiff." *Held,* that the omission of the judge to distinguish between circumstances which could be reasonably anticipated, and those in their nature extraordinary, but which would make unusual pre-cautions proper, if they could have been foreseen, entitled the defendants to a new trial.

In an action against a railroad corporation for a personal injury, an averment in the decla-ration, that the plaintiff was struck by their locomotive engine while travelling in the highway, is not sustained by proof that, by means of the defendants' negligence in the management of their train, the plaintiff's horse was frightened, and ran or was driven out of the highway, five or six rods before reaching the railroad crossing, upon land owned by the defendants, and the plaintiff was there struck, while attempting to cross the railroad. And the declaration cannot be amended after verdict, so as to cure this variance. .

The degree and measure of care due from a railroad corporation and from a traveller in the highway, at a railroad crossing, are precisely the same; being those which men of ordinary sense, prudence and capacity would take under like circumstances in the con-duct and management of their respective vehicles.

In an action by a traveller in the highway against a railroad corporation, for injuries sus-tained by collision with their locomotive engine at a railroad crossing, the presiding judge instructed the jury, " that the plaintiff was bound to use ordinary care in the con-duct and management of his vehicle in the highway, and in the approach to and passage of the crossing; and the defendants were bound to use reasonable care in the conduct and management of their engines and trains, the manner and extent of which would be such care in the management of their engines and trains as would be sufficient to enable a traveller upon the highway, who used ordinary care, there to pass over the crossing in safety." *Held,* that these instructions were objectionable, as implying that proof of due care on the part of the plaintiff would of itself show that the defendants were in fault.

In an action by a woman against a railroad corporation for personal injuries occasioned to her by their locomotive engine, the death of the plaintiff's husband by the same acci-dent, or the fact that she has dependent children, is not admissible in evidence to increase the damages.

In an action for damages against a railroad corporation by a woman who, by being struck by their locomotive engine, had lost one arm and the use of the other, and been other-wise much bruised and injured, so as greatly to impair her health and memory, and put her in constant pain, the plaintiff, at different trials, obtained three verdicts, of $15,000, $18,000 and $22,250, respectively, the two first of which were set aside for errors in the instructions of the presiding judge. The court refused to set aside the third verdict on the ground that the damages were excessive.

ACTION OF TORT for injuries sustained by the plaintiff, by rea-son of being struck by the defendant's locomotive engine.  Writ

dated July 29th 1852. *Ad damnum*, twenty five thousand dollars.

The plaintiff's declaration alleged that the defendants were a corporation, owning a railroad with branches extending into different towns upon its line, one of which extended through Newton to Needham, and was known as the Newton Lower Falls Branch; that they owned and ran at stated times a train or trains of cars over their principal road and said branch; "that on the 27th day of January A. D. 1852, as she, with her husband, the late George W. Shaw, and one other person, in a sleigh drawn by a horse, were travelling, with due care and foresight, over the turnpike road or highway, in said Needham, across which the said branch of railroad is constructed, and as they were crossing the track of said railroad branch, in said Needham, a train of cars, drawn by a steam engine at great speed, belonging to and run by the defendants, ran into and over the vehicle in which said plaintiff was riding; and threw, with great violence, producing a severe concussion, herself and her husband aforesaid upon the track of said railroad; and ran over them, and broke their limbs, causing the death of her said husband within a few hours thereafterwards, and breaking the arms of the plaintiff, and bruising her body and limbs; by reason of which serious injuries the plaintiff has lost the whole of her left arm, a part of her right hand, and the use of her right arm, and has sustained other great and permanent bodily injuries, and has suffered great distress of body and mind to the present time, and has been at great expense in consequence of the same. And the plaintiff says, the defendant corporation were guilty of great negligence and carelessness; and that in consequence of said negligence and carelessness she, the said plaintiff, and her said husband were run over and injured as aforesaid. And the plaintiff further says, that the said corporation gave no proper and legal notice of approach and passing of their said train of cars across the said highway, at the time of said injuries; nor did they give any legal or proper caution to travellers, of the existence of said railroad crossing; and took no proper precaution to warn travellers of the approach of said train, and to protect

them from harm and injury, as was their duty to do; that the said train of cars was run across said highway at an unusual and dangerous speed, and to a point much further than usual or necessary, by reason of the carelessness and negligence of the defendants' servants; and that the defendants were guilty of great carelessness and negligence in the management of said railroad branch, and the trains run upon the same, in not giving notice and warning as aforesaid; in the great and dangerous speed at which said train was run across said highway at a dangerous point; and in not guarding properly against collision with those who were crossing said railroad over said highway; whereby the plaintiff was injured as aforesaid."

The answer admitted the defendant's incorporation, ownership of the railroad, running of trains thereon, and that their branch railroad crossed the highway, as alleged. It also admitted that the plaintiff, on the day alleged, was travelling with her husband in a sleigh along said highway, and that the sleigh came in collision with the defendants' locomotive engine and train of cars, and the plaintiff, by reason of such collision, was thrown from the sleigh and severely injured and bruised, and her arms broken; but alleged the defendants' ignorance, and left the plaintiff to prove, whether the collision happened on the highway, whether the engine and cars ran into and over the sleigh, and what damage, pain and loss the plaintiff sustained. It denied that the plaintiff was then and there travelling with due care and foresight, and alleged that the plaintiff was then and there guilty of negligence and carelessness in travelling, and that the accident happened and the damage was sustained by reason of such negligence and carelessness; denied that the engine and cars were drawn or moved at great speed, and alleged that they then and there moved at a moderate and reasonable speed; and denied that the defendants were guilty of any neglect or carelessness in the management of their train, or in the omission to give all reasonable, proper and legal notice of the approach and passing of the train across the highway, or of the existence of the railroad crossing, or in the omission of any other care or duty legally incumbent on them, whereby the

plaintiff had suffered the alleged injuries, in the management of the defendants' said railroad, or the condition or construction thereof.

At the trial at March term 1854, before *Bigelow*, J., it appeared that the plaintiff, at the time of the accident, which was late in the evening, was riding in a sleigh, with her husband and another person, a female; that the plaintiff sat on the front seat and was driving, and the others sat behind; that after the disaster the plaintiff and her husband were taken up, both severely injured, and carried into separate apartments of the railroad station, which was close by, where they remained until they were carried home; and that the husband died early the next morning in consequence of his injuries.

The defendants offered in evidence the declarations of the husband, concerning the cause and circumstances of the accident, made by him while in the station; but as they were not made in the presence or hearing of the plaintiff, they were rejected.

Much conflicting evidence concerning the character and disposition of the horse was introduced and submitted to the jury; and the plaintiff admitted that they were well known to her and her husband to have been such as they were proved to have been, inasmuch as her husband had owned the horse for two years before the accident. The defendants offered to show, that "some time prior to the accident certain statements, concerning the character of the horse which the plaintiff was driving at the time of the accident, were made by a witness to the plaintiff's husband." But it appearing that the plaintiff was not present when such statements were made, and there being no proof of their having been ever communicated to her, they were rejected.

The defendants offered in evidence a record of the proceedings of the county commissioners of Norfolk at September term 1846, by which, upon the petition of the defendants, concurred in by the selectmen of Needham, for leave to construct thei. branch railroad so as to cross said highway upon a level, with out being required to erect any gate across their road at the crossing, or to exhibit any flag at the times of crossing, said

commissioners, after a view and hearing, declared their " opinion that no injury, danger or inconvenience would result to the travel on said public highway, by reason of the railroad crossing the same on a level therewith, provided no passenger or freight house of said railroad should be placed nearer than one hundred feet of said public road ; " and authorized the defendants so to cross, upon condition that they should not so place any such house ; and added, " the commissioners do not deem it necessary, for the present, to require said railroad corporation to erect any gate, or exhibit any flag, as additional security to travellers on said public highway." But, the plaintiff having expressly waived any claim upon the ground of a failure of the defendants to comply with the requisitions of the county commissioners, the judge rejected this evidence; and, upon this point, instructed the jury that the plaintiff was precluded from any claim for negligence of the defendants, on the ground that the requirements of the commissioners and the selectmen, made under the statutes, had not been complied with.

The plaintiff introduced and relied on much evidence tending to show that the defendants were guilty of negligence at the time and place of the accident, by omitting to ring the bell on the engine, and to sound the whistle ; by going at a very rapid speed ; by failing to apply the brakes to the engine and cars in season ; by neglecting to keep a proper lookout ahead for vehicles approaching on the highway ; and not having a flagman or person in attendance at the crossing to warn travellers on the highway of the approach of the engine ; that the crossing was peculiarly dangerous, owing to the sight being obstructed, as travellers on the highway approached, by the houses and buildings of the village, which rendered great precautions on the part of the defendants necessary, which were omitted ; and that in these and other particulars the defendants were guilty of negligence. Much evidence was offered by the defendants to rebut and control this testimony, in all its particulars, and to show that great care was used at this crossing. And the jury were taken to view the crossing in question during the trial.

Upon this state of proof, the counsel for the defendants re-

quested the following special instructions: " That the statute law having prescribed the ringing of the bell as the warning to travellers at highway crossings, and provided other specific provisions for their security if that should be insufficient in the opinion of public officers appointed to act upon that question, the ringing of the bell at this crossing was all that was required by law, unless there was something peculiar to it, which rendered another mode of notice necessary; and that the burden is on the plaintiff to show such peculiarity, and that it was such as created a difficulty in hearing a bell at a reasonable distance.

" That the statute law having placed the power of providing certain and perfectly safe precautions, for the protection of travellers at crossings, in the hands of public servants elected by the people in the neighborhood of said crossings, to be constructed at the expense of the railroad corporations, provided that the ringing of the bell should not be considered sufficient by such public servants; and this road having been in operation at that time for six years; and there being no proof that any complaint had been made that the ringing of the bell was not sufficient; and no requisitions having been made by the public servants for any further precautions; the legal presumption is, that no other precautions were necessary, and the burden of proof is on the plaintiff to prove that some other was ordinarily necessary.

" That the statute law having placed it in the power of public servants to determine upon the necessity of erecting gates at railroad crossings, and to dispense with the erection of them, and there being no proof that any such requisition had been made upon the defendants to erect a gate, the want of one, or of any substitute for one, cannot be accounted negligence.

" That, to render the defendants liable in the action, they must be proved guilty of negligence, or want of ordinary care or diligence, in the omission of proper precautions at this crossing— the want of such care and diligence as are usually exercised in like cases; and therefore that, to find the defendants guilty of negligence in omitting to have a flagman stationed there, or in the omission of any other precaution, the jury must be satisfied that such precautions were ordinarily used at railroad crossings

like this; and that, unless it is satisfactorily proved that such precautions were ordinarily used under like circumstances at that time, the plaintiff is not entitled to recover."

But the court refused to give the instructions asked for, and instructed the jury as follows : " That the burden of proof was on the plaintiff to satisfy the jury, by the clear weight and full preponderance of the proof—the preponderance of probabilities merely not being sufficient—that the defendants had been guilty of negligence and want of ordinary care, (which were defined and illustrated in a manner to which no exception was taken ;) that this was a question of fact, to be determined by them upon the whole evidence in the case, including their own observation at the view; that if, from the difficulty of hearing the bell or seeing the train at a reasonable distance, or from other causes, as disclosed by the testimony, the defendants had been guilty of a want of due and reasonable care, by omitting such warnings and precautions as persons of ordinary care, under like circumstances, would and ought to use, and thereby caused damage to the plaintiff, she would be entitled to recover; that the plaintiff did not claim damages by reason of negligence in the defendants in not having a gate at this crossing, having expressly waived it ; but she did claim that the defendants were guilty of negligence, in omitting to have a flagman there to give notice of the approach of the train ; that on this point it was the duty of the plaintiff to satisfy the jury that this was a necessary, reasonable and proper precaution, in the exercise of ordinary care on their part, at the place, time and under the circumstances proved at the time of the accident; that the question for the jury to determine was not as to what other railroads had, or might, or ought to have done at different times, in other places, and under different circumstances; nor was the plaintiff bound to offer proof of usage by other railroads, although evidence of such usage might have been competent, as bearing on the issue ; but the question was, whether the defendants had been guilty of negligence at the time when the accident happened ; and this was to be determined on the whole evidence in the cause, bearing on this part of the case—the bur-

den of proof being on the plaintiff; that the use of such precau-
tions and guards as were directed by the statutes would not
exempt the defendants from the consequences of negligence in
other particulars; and that, although the jury should be satisfied
that the defendants had complied with all the requirements of
the statutes, such as ringing the bell on the engine, erecting sign-
boards at the crossing, &c., this would not exempt them from
liability, if the jury were satisfied they had omitted other pre-
cautions, which, in the exercise of due and ordinary care, they
were bound to take, at the time, place and under the circum-
stances of the accident, the omission of which proper precau-
tions was the efficient cause of the damage and injury to the
plaintiff." Upon this point the judge read to the jury the opinion
of this court in *Bradley* v. *Boston & Maine Railroad*, 2 Cush.
539, and directed the jury to take the rule there laid down for
their guidance, so far as it was applicable to the present case.

The jury returned a verdict for the plaintiff in the sum of
$15,000; and the defendants alleged exceptions, which were
argued at November term 1855.

*C. G. Loring & G. Bemis*, for the defendants. 1. The negli-
gence of the plaintiff's husband was at least as good a defence
as her own negligence. He having been present at the accident,
had these defendants suffered injury by the collision, she, being a
a feme covert, could not have been held liable to them, either
civilly or criminally. 2 Kent Com. (6th ed.) 133. *Rex* v.
*Price*, 8 Car. & P. 19. *Regina* v. *Thompson*, 1 Denison, 549.
*Park* v. *Hopkins*, 2 Bailey, 411. *Commonwealth* v. *Neal*, 10
Mass. 152. 16 Mass. (Rand's ed.) 389, *note*. The same result
follows from her relation to him as his agent or servant. *Chand-
ler* v. *Broughton*, 1 Cr. & M. 29. *M'Laughlin* v. *Pryor*, 1 Car.
& M. 354. *Brucker* v. *Fromont*, 6 T. R. 659. *Parsons* v.
*Winchell*, 5 Cush. 592. *Bishop* v. *Ely*, 9 Johns. 294. *Noble* v.
*Paddock*, 19 Wend. 456. Oliphant on Horses, 167. His own
declarations were competent evidence of his negligence, and
were admissible against her, because of the identity of interest
existing between them, both at the time of the accident, and
when the declarations were made. Her cause of action accrued

5*

at the time of the accident, not of his death; and the same rules of evidence should be applied as if the action had been brought at the moment of the injury. When the declarations were made, he could have released all claim for her damages. *Southworth* v. *Packard*, 7 Mass. 95. *Ballard* v. *Russell*, 33 Maine, 196. *Beach* v. *Beach*, 2 Hill, (N. Y.) 260. *Turtle* v. *Muncy*, 2 J. J. Marsh. 82. Bingham on Infancy, (2d Amer. ed.) 210. If the suit had been brought in his lifetime, his declarations would plainly have been admissible in defence; and the cause of action survives to the wife, subject to what he has said or done. *Evans* v. *Smith*, 5 T. B. Monr. 363. *Taylor* v. *Bate*, 4 Dana, 202. 1 Cowen & Hill's Notes to Phil. Ev. (3d ed.) 73. *Dodge* v. *Manning*, 11 Paige, 334. She claims through him, not only as a necessary party, while living, to her suit; but as the principal party in privity of title. 1 Chit. Pl. (6th Am. ed.) 74. *Ballard* v. *Russell*, and *Beach* v. *Beach*, above cited. *Jones* v. *McKee*, 3 Barr, 496. 1 Greenl. Ev. §§ 170, 185, 254, and cases cited. 2 Greenl. Ev. § 341. See, for analogous instances of the admissions of declarations of persons in privity in matters of personalty, *Ivat* v. *Finch*, 1 Taunt. 141; 1 Stark. Ev. (4th Amer. ed.) 52, 53; 1 Cowen & Hill's Notes to Phil. Ev. 264; in matters relating to the realty, *Dartmouth* v. *Roberts*, 16 East, 334; *Doe* v. *Jones*, 1 Campb. 367; *Hodges* v. *Hodges*, 2 Cush. 455; in cases of partners and joint obligors, *Whiting* v. *Whitcomb*, 2 Doug. 652; *Wood* v. *Braddick*, 1 Taunt. 104; *Cady* v. *Shepherd*, 11 Pick. 400; Angell on Lim. (3d ed.) § 248; 2 Stark. Ev. (4th Amer. ed.) 42, 43, 45; of master and servant, principal and agent, consignor and consignee, *Price* v. *Powell*, 3 Comst. 322; 2 Stark. Ev. 43, 52, 53; *The Manchester*, 1 W. Rob. 62.

Under the peculiar circumstances of this case, the declarations of the husband were part of the *res gestæ*. *Aveson* v. *Kinnaird*, 6 East, 188. *Commonwealth* v. *M' Pike*, 3 Cush. 181. *Johnson* v. *Sherwin*, 3 Gray, 374. 1 Greenl. Ev. (7th ed.) § 108, *note* 2. 1 Cowen & Hill's Notes to Phil. Ev. 207, 210.

The fact of his death furnishes an additional reason for their admission.

2. The previous cautions or statements to the husband were admissible in evidence, as showing his knowledge of the disposition and habits of the horse, and thus affecting the degree of care required. Whatever was carelessness in the management of the vehicle at the time of the accident may be shown in defence. *Thorogood* v. *Bryan*, 8 C. B. 115. *McLaughlin* v. *Pryor*, 1 Car. & M. 354. *Beamon* v. *Ellice*, 4 Car. & P. 586. *Chandler* v. *Broughton*, 1 Cr. & M. 29. *Noble* v. *Paddock*, 19 Wend. 456.

3. The record of the adjudication of the county commissioners should have been admitted in evidence. (1.) As conclusive evidence of the lawfulness of the crossing upon a level. *Sts.* 1846, *c.* 271, §§ 1, 2; 1842, *c.* 22. Rev. Sts. *c.* 39, § 80. *Rice* v. *Commissioners of Highways*, 13 Pick. 225. *Commonwealth* v. *Westborough*, 3 Mass. 406. *Kingman* v. *County Commissioners*, 6 Cush. 306. *Callender* v. *Marsh*, 1 Pick. 418. (2.) As an official adjudication of the appropriate tribunal, that a gate tender or flagman was not necessary to the safety of travellers on the highway; or at least as competent evidence of proper care on the part of the defendants. *Bliss* v. *Deerfield*, 13 Pick. 110. Where the omission of statute precautions would raise a presumption of negligence, it is always for a party to show that he has fulfilled the conditions of the law, though additional precautions on his part might still be necessary. *Worster* v. *Canal Bridge*, 16 Pick. 541. *Parker* v. *Adams*, 12 Met. 415. *Bacon* v. *Boston*, 3 Cush. 174. *Bradley* v. *Boston & Maine Railroad*, 2 Cush. 539.

4. The court erred in refusing the instructions prayed for as to the precautions required by law of the defendants at the crossing.

*R. Choate & H. F. Durant*, for the plaintiff. 1. The declarations of the husband, in regard to the cause and circumstances of the accident, not made in the presence of this plaintiff, were hearsay, and rightly rejected. They were not admissible as declarations made against interest. *Framingham Manuf. Co.* v. *Barnard*, 2 Pick. 532. *Lawrence* v. *Kimball*, 1 Met. 524. *Watts* v. *Howard*, 7 Met. 478. *Cluggage* v. *Swan*, 4 Binn. 150. *Pottshall* v. *Turford*, 3 B. & Ad. 898. *Papendick* v. *Bridgwater*, 5 El. & Bl. 166. 1 Phil. Ev. (6th Amer. ed.) 296.

They were not declarations of one identified in interest with

the plaintiff. 1 Greenl. Ev. § 176, 177, and cases cited. *Barough* v. *White*, 4 B. & C. 325. *Bristol* v. *Dann*, 12 Wend. 142. The husband and wife never had a joint interest in the subject matter of this suit. This cause of action is for personal injuries to the wife. He could not alone have maintained any action upon it. 1 Chit. Pl. 85. The right of action was in her alone, notwithstanding coverture ; and although he should have been joined as a plaintiff, yet his nonjoinder could have been taken advantage of in abatement only, and not in bar. *Dalton* v. *Midland Counties Railway*, 13 C. B. 474. The husband's only right in this claim was the same which he has over all the wife's choses in action—the right to reduce to possession; *Gallego* v. *Chevallie*, 2 Brock. 285 ; *Kintzinger's Estate*, 2 Ashm. 463 ; *Rumsey* v. *George*, 1 M. & S. 180; *Purdew* v. *Jackson*, 1 Russ. 1 ; and perhaps, as one mode of such reduction, to release it, though this is doubted. *Harrison* v. *Almond*, 4 Dowl. 321. Never having made it his property by reducing it to possession, nor even attempted to claim it, it remained his wife's sole property during coverture and after his death ; and his admissions cannot now affect it.

Even if the action had been brought by them jointly, the husband's declarations would not have been admissible against the wife. *Alban* v. *Pritchett*, 6 T. R. 680. *White* v. *Holman*, 3 Fairf. 160. 1 Greenl. Ev. § 341.

The death of the husband does not make his declarations competent evidence. *Smith* v. *Scudder*, 11 S. & R. 326. *Wheeler* v. *Moore*, 13 N. H. 481. *O'Connor* v. *Marjoribanks*, 4 Man. & Gr. 440. *Doker* v. *Hasler*, Ry. & Mood. 198. 1 Greenl. Ev. § 131.

They were not competent as dying declarations. 1 Greenl. Ev. §§ 156, 158. *Rex* v. *Lloyd*, 4 Car. & P. 233. *The King* v. *Mead*, 2 B. & C. 605. *Wilson* v. *Boerem*, 15 Johns. 286. *Jackson* v. *Kniffen*, 2 Johns. 35.

They were mere narrations explanatory of the previous fact, and were not competent as part of the *res gestœ*. 1 Greenl. Ev § 108, & note. *Salem* v. *Lynn*, 13 Met. 544. *Haynes* v. *Rutter*, 24 Pick. 242. *Merrill* v. *Sawyer*, 8 Pick. 397 *Scaggs* v. *State*,

8 Sm. & Marsh. 722. *Cornelius* v. *State*, 7 Eng. (Ark.) 782. *In re Taylor*, 9 Paige, 611. *Noyes* v. *Ward*, 19 Conn. 250. *Davis* v. *Sanders*, 11 N. H. 263.

2. Upon similar grounds, the evidence of statements to the husband, concerning the character of the horse, not shown to have been known to the wife, are inadmissible against her.

3. The record of the county commissioners was properly excluded. The plaintiff had waived any claim on the ground of negligence with not complying with the lawful requisitions of the commissioners. "To exhibit a flag" was a duty which the county commissioners could not impose upon the defendants, nor release them from. *St.* 1846, *c.* 271, § 2. Rev. Sts. *c.* 39, § 80. Therefore so much of their order was void, and the remainder immaterial.

4. The instructions prayed for, so far as they are correct in point of law, were substantially covered in the instructions given.

SHAW, C. J. 1. The first point raised by the bill of exceptions arises upon the rejection of the declarations, concerning the cause and circumstances of the accident, made by the husband while in the railroad station. Upon consideration, the court are of opinion that, under the peculiar circumstances of the case, that decision was right.

The object manifestly was, to disparage the plaintiff's right to recover, by proving some facts or circumstances showing that he and the plaintiff were not without negligence on their part. But still, it was essentially of the character of hearsay statements without oath; and nothing sufficient to make it an exception, and take it out of the operation of the general rule against hearsay, was shown.

It is true that, if the husband had survived, and she had brought the action, he must have joined with her in the suit; not because the cause of action was joint, accruing to them jointly; nor because it was not a separate and independent cause of action, accruing to herself severally, for injuries to her own person; but because the rule of the common law, originating in the policy which regards man and wife as one person

in law, requires that, when a feme covert has occasion to come into a court of justice to obtain personal redress, the husband must join for conformity.

The cause of action was independent and personal to herself, not derived from, through or under the husband, at the time it accrued ; and therefore, in the event which happened, that the husband died before the action was brought, she properly sued in her own right and name ; and therefore the acts and declarations of the husband, at the time they were made, were the admissions of one with whom she was not privy in right, and by whose admissions she was not bound. The declarations were not made in the presence of the plaintiff, so that she could either correct them, or object to their correctness. They had none of the characteristics of a dying declaration ; nor was it a case in which dying declarations of any deceased party would be competent evidence.

2. Another point of somewhat the same kind was made, by the offer of evidence on the part of the defendants, that, some time prior to the accident, statements were made concerning the character of the horse, to the plaintiff's husband ; but as there was no evidence that the plaintiff was present, or that they came to her knowledge, they were rejected. This, we think, was right, upon the grounds already stated ; and further, because the character of the horse, whether unruly, ill broken and unmanageable, or otherwise, was well known to the plaintiff and her husband, who had owned him for two years previous to the accident.

3. Perhaps the rejection of the evidence of the record of the county commissioners was more open to objection ; because the *St.* of 1846, *c.* 271, forbids railroads to be made across highways at a level, or on the same grade, without the authority of the county commissioners. But as the record of the county commissioners, as offered, expressed a certain opinion of theirs respecting the necessity of keeping a flagman, which was not within their jurisdiction, and as the plaintiff's counsel admitted that the county commissioners, upon application of the defendants, had authorized and required the defendants to con-

struct their railroad, at the crossing in question, upon a level with the highway, upon certain conditions, which had been complied with, and did not think it necessary to require them to erect and maintain a gate across the railroad at such crossing, the particular paper, embracing the expression of an opinion not within their jurisdiction, was rightly rejected.

4. Much evidence was offered by the plaintiff, tending to show that the defendants were guilty of negligence, at the time and place of the accident, in various particulars; and much evidence was offered by the defendants to rebut and control this testimony, in all its particulars, and to show that great care was used at this crossing; and the jury had a view.

Several prayers for specific instructions were offered by the defendants, which the court refused to give; but did give instructions fully set forth in the bill of exceptions. It is objected, on the part of the defendants, that, taking the refusal of the prayers for instructions, and the instructions actually given, the jury may have believed, as the true rule of law, that although the railroad corporation had complied with all the regulations required by law, and had taken all such precautions previously, and used all such care and diligence, as men of common sense and ordinary skill and experience would consider requisite for the safety of passengers over the highway generally; yet, if there was anything peculiar in the time, place and circumstances, which would have rendered the presence of a flagman or guard specially useful on that occasion, such as the time of night, the detention of the train, if any, the snow on the ground, or the extreme cold; and if the presence of such guard, to give such seasonable notice to the travellers, would have prevented the accident; then the failure of the company to provide such a guard was such negligence as would render them liable.

If such was the impression made on the minds of the jury by the terms of the instructions, we think it would be incorrect. The rule, we think, is, that the company are bound to guard against all accidents likely to occur, which may be reasonably anticipated, from the season of the year, the time of night, and other circumstances. But if there be an unusual darkness, a

thunder shower or snow storm, which, if it could have been anticipated, would have rendered extraordinary and unusual precautions useful and necessary, the want of them, upon any particular occasion of an extraordinary character, which could not be anticipated, would not be that negligence or want of ordinary care and prudence which would render the company responsible.

On examining these instructions, though in general cautious and well guarded, we are inclined to the opinion, that they may have impressed and influenced the minds of the jury in the manner suggested in the argument. The court stated correctly that the burden of proof was upon the plaintiff, who must prove want of ordinary and reasonable care, by omitting such warnings and precautions as persons of ordinary care, under like circumstances, would and ought to use; that the plaintiff did not claim damage by reason of the defendants not having a gate at this crossing—having expressly waived it; but that she did contend that the defendants were guilty of negligence, in omitting to have a flagman there, to give notice of the approach of the train. The court then stated that it was the duty of the plaintiff to satisfy the jury, that this was a proper precaution, in the exercise of ordinary care on their part, " *at the place, time, and under the circumstances proved* at the time of the accident;" and, in a latter part of the charge, " that the use of such precautions and guards as were directed by the statutes would not exempt the defendants from the consequences of negligence in other particulars; and that, although the jury should be satisfied that the defendants had complied with all the requirements of the statutes, such as ringing the bell on the engine, erecting sign boards at the crossing, &c., this would not exempt them from liability, if the jury were satisfied they had omitted other precautions, which, in the exercise of due and ordinary care, they were bound to take, *at the time, place and under the circumstances of the accident*, the omission of which proper precautions was the efficient cause of the damage and injury to the plaintiff."

We are apprehensive that, from the repeated reference to the time, place and circumstances of that accident, the jury may

have taken the law to be, from the instructions given them, that, although the precautions taken at that crossing were such that, under ordinary circumstances, a flagman or watchman was not necessary to ensure the reasonable safety of passengers, yet, if the circumstances of the time and place, the weather, the state of the light, &c., were such, that if they were common and habitual a watchman would be useful and necessary, it was the duty of the railroad corporation to have a watchman there, and the want of one would be such negligence on their part as would render them responsible for the consequences of the disaster. Supposing the jury may have so understood the instruction, and acted under a mistaken view of the law in this respect, the court are of opinion that the verdict ought to be set aside, and a                                                                       *New trial had.*

A new trial was had in September 1857, before *Merrick*, J., who signed the following bill of exceptions, of which the declaration and answer were made parts.

" The defendants, in order to show the vicious and unsafe character of the horse driven by the plaintiff at the time of the accident, offered to show, by the testimony of Henry L. Howe, that the husband of the plaintiff had before that time offered to sell the horse to said Howe, and had given as a reason for selling him, that the horse was so unmanageable and vicious that he could not keep him. The plaintiff had introduced evidence to show that her husband had used the horse and kept him as a family horse, and that he was never unmanageable with him This evidence was excluded by the presiding judge.

" The plaintiff, and the only witness who was present with her at the time of the collision, and upon whose testimony to prove proper care and caution on the part of the plaintiff the case chiefly rested, testified that they drove in the middle of the travelled path up close to the crossing, when, as the engine approached, the horse gave one leap, and the engine struck them. The defendants offered evidence to show that the horse became terrified and left the travelled path, or that the plaintiff turned him from the travelled path, several rods before he

reached the crossing; and that he went upon the land of the defendants at a place ten feet out of the highway, before the collision took place, and that the sleigh was there struck by the engine; and claimed, and asked the court to rule, that this would prove a case variant from that alleged in the declaration, and was besides of great importance, if found by the jury, as showing that the plaintiff's evidence, as to the mode in which the accident occurred, and the care used by her, was not reliable or true. The plan used at the trial may be referred to." [The information to be derived therefrom is sufficiently stated in the opinion.]

" But the judge instructed the jury, that, having regard to the question whether the parties respectively used due care, the precise place where the collision between the engine and sleigh actually occurred seemed to be of very little importance; that if the plaintiff wandered or unlawfully trespassed upon the defendants' premises, and there met with an accident, she could not recover; but that if the defendants were guilty of negligence in the management of their train, and thereby the plaintiff's horse was frightened, and ran or was driven upon the defendants' land, the defendants would be liable, under the pleadings in this action, although the collision had taken place out of the highway, and at the place indicated by the defendants' evidence.

" The presiding judge instructed the jury that, although the defendants had complied with all the statute requisitions in relation to the crossing, and running of their trains over it, they were further bound to use such proper precautions, and resort to such additional expedients in the conduct and management of their trains, such, for example, as moving them at a low and moderate degree of speed, as would enable travellers upon the highway to pass along thereon with safety, by using due care for their own protection; that the plaintiff was bound to use ordinary care in the conduct and management of her vehicle in the highway, and in the approach to and the passage of the crossing; and that the defendants were bound to use reasonable care in the conduct and management of their engines and trains, and that the manner and extent of this care would be such

care in the conduct and management of the engines and trains as would be sufficient to enable a traveller upon the highway, who used ordinary care, there to pass over and by the crossing with safety.

" It appeared in evidence that the plaintiff's husband was killed by the accident, and the plaintiff lost the use of both arms, and her health was seriously affected and her general faculties of body and mind impaired, by reason of the injuries which she sustained ; and that the plaintiff was the mother of a family of young children, and without property sufficient for their support. And the hardship, suffering and loss, which her injuries must occasion, and her helpless condition through the rest of her life, were urged upon the attention of the jury by her counsel.

" The counsel for the defendants requested the court to instruct the jury in relation to the principles and rules which should guide them in the assessment of damages ; and, especially, in regard to the limitations in relation to pain, and the loss of bodily functions or mental powers, and in regard to injuries which were in their nature wholly intolerable, and not to be measured by any pecuniary standard ; and also to instruct them that the plaintiff was not entitled to any other or greater damages on account of her peculiar domestic or social relations, or on account of her capacity to render her labor profitable to herself, under the allegations in her declaration. But the presiding judge did not so instruct the jury, and did not instruct them upon the subject of damages, except that the plaintiff would be entitled to full and adequate remuneration for all the loss she had sustained, and a compensation for all she had suffered ; that they would not take into account, merely or chiefly, what sum would be equivalent to the charges and expenses of sickness and medical attendance, or what sum she would earn by her daily labor; but they should give her a sum equivalent to all the loss she had sustained, and a reasonable compensation for all the pain she had suffered ; that there was no legal standard by which the jury could measure damages so as to adjust their award of money to injuries of such a nature as could not be estimated in money ; and that they should be governed by a

sound discretion in assessing the damages upon the evidence and proof laid before them, in relation to the injuries she had sustained; and that, exercising their own judgment upon this evidence, there was no limit to the amount of damages which they would be authorized to assess, except the amount of the claim made by the plaintiff.

" The jury returned a verdict for the plaintiff for eighteen thousand dollars. To the several rulings, instructions and refusals of the court above stated, the defendants excepted."

These exceptions were argued and decided at March term 1858.

*E. R. Hoar,* for the defendants. 1. The evidence as to the habits and disposition of the horse was admissible as a declaration accompanying and qualifying an act, and so making part of the act. 1 Greenl. Ev. § 108, and cases there cited.

2. The case proved by the defendants, as to the place and manner of the collision, showed a variance from the case alleged in the declaration. 1 Saund. Pl. & Ev. (2d ed.) 739. *Hartley* v. *Harriman,* 1 B. & Ald. 620. *Williams* v. *Morland,* 2 B. & C. 910. Rev. Sts. *c.* 39, § 85.

The ruling of the court did not cover the ground taken by the defendants, and upon which the evidence was most vital to the chief issue in the case, namely, the credit of the plaintiff and her friend as witnesses, and the evidence of care used by the parties respectively.

3. The instructions of the court with regard to the care required of the parties conveyed to the minds of the jury the idea that a different and higher degree of care was required of the defendants than of the plaintiffs, to avoid a collision; and made the defendants liable in case of accident without fault of either party, where each was careful. *Brand* v. *Schenectady & Troy Railroad,* 8 Barb. 368. *Beers* v. *Housatonic Railroad,* 19 Conn. 566.

4. On the subject of damages, the refusal to instruct the jury upon the points asked by the defendants, and the general language in which the instructions were given, permitted the jury to include elements of damages which the law does not recog-

nize. *Carey* v. *Berkshire Railroad*, 1 Cush. 475. *Canning* v. *Williamstown*, 1 Cush. 451. *Baldwin* v. *Western Railroad*, 4 Gray, 333. *Rapson* v. *Cubitt*, 1 Car. & M. 41. In case of death from carelessness, the legislature have fixed the extreme limit of damages at five thousand dollars. *Sts.* 1840, *c.* 80 ; 1853, *c.* 414, § 1. The failure of the court to give the full instructions prayed for, and applicable to the case, is a ground of exception. *Kellogg* v. *Northampton*, 4 Gray, 65. And the amount of damages found tends to show that the jury have mistaken their duty. *Blake* v. *Midland Railway*, 18 Ad. & El. N. R. 93, and cases cited.

*Choate & Durant*, for the plaintiff. 1. The first exception is disposed of by the former opinion, *ante*, 56, 57.

2. The facts proved as to the mode and place of the collision do not show a variance from the declaration. *Housatonic Railroad* v. *Waterbury*, 23 Conn. 101. *Underhill* v. *New York & Harlem Railroad*, 21 Barb. 489.

The variance, if any, is immaterial, and may be cured by amendment, even after verdict. Rev. Sts. *c.* 100, § 22. *St.* 1852, *c.* 312, § 28. *Cleaves* v. *Lord*, 3 Gray, 66.

3. The rule of care, which the defendants were bound to exercise, was correctly stated. The term " reasonable care," as used in the charge to the jury, had no greater force than " ordinary care." Even if it had, no injustice was done to the defendants ; for railroad corporations are bound to use reasonable care. *Bradley* v. *Boston & Maine Railroad*, 2 Cush. 540. *Linfield* v. *Old Colony Railroad*, 10 Cush. 562. *Macon & Western Railroad* v. *Davis*, 18 Georgia, 679. *Baltimore & Susquehanna Railroad* v. *Woodruff*, 4 Maryland, 242. *Trow* v. *Vermont Central Railroad*, 24 Verm. 487.

4. Upon the subject of damages, the instructions prayed for were indistinct and hypothetical. No allegation of special damage was necessary in the declaration. *Curtiss* v. *Rochester & Syracuse Railroad*, 20 Barb. 282. No special damages are alleged or claimed here ; and the instructions given were correct, 'eaving the amount of damages, where the law leaves it, to the

sound discretion of the jury. *Morse* v. *Auburn & Syracuse Railroad*, 10 Barb. 621.

SHAW, C. J. This cause has heretofore been presented to the court, under circumstances where the court felt themselves bound to set the verdict aside, and order a new trial. It is to be regretted that in a case of so much interest and importance, where the attendance of so many witnesses is necessary, and the trial in other respects is necessarily attended with great labor and expense, a second or third trial should be required. But as the use of railroads is still of comparatively modern origin ; as this mode of transportation of persons and property, though of great public utility, is necessarily attended with great danger ; and as railroad disasters, when they do occur, from negligence, accident or otherwise, are often, as in the present case, attended by the most deplorable consequences, involving disability for life ; it seems necessary that each case should be decided upon the fullest deliberation, and decided upon such principles that it may stand as a precedent for succeeding cases, without danger of working injustice.

It will be considered that in the present case the plaintiff was not a passenger in the train of the defendant corporation, and therefore there was no contract for the safe carriage of the plaintiff, express, or implied by law, and no right existed, growing out of the well known relation of passenger and passenger carrier for hire. But though the duty of each of the parties toward the other, each using a common privilege or franchise, springs from a different source, it is not essentially distinct in its nature from that of passenger and passenger carrier. It is founded in the solid principle of equity, expressed by the maxim, *Sic utere tuo, ut alienum non lædas*. The rule therefore is, that in the use of a common privilege, where there is a possibility of interference, each is bound to bring to the use of such privilege such reasonable degree of foresight, skill, capacity, and actual care and diligence, as may be necessary to enable him to use the privilege with due regard to the safety of all others using like precautions, skill and care, and such as a person of ordinary sense, prudence and discretion would use in regard to his own

affairs under like circumstances. If therefore an interference does take place, and damage is done to one or both of the parties, if one can show that he has in all respects used due and reasonable skill and care, in his previous preparations and actual conduct, and can show that the other party has not had the same skill and care, as required by the actual circumstances of the case, in consequence of which the interference occurred, he is entitled by law to a fair and just indemnity for the damage by him actually sustained. If it appears from the whole evidence, upon a careful investigation of the facts, that both parties used due precautions, skill and care, as required by the circumstances of time, place and manner of using the common privilege, notwithstanding which an interference unfortunately occurs, it is one of those cases of pure accident, to which all human beings are constantly exposed, for which no person is in fault, and in which all losses and damages occasioned thereby must lie where they first fall.

It appears from the uncontested facts, in the present case, that there was an open public highway in Needham, along which the plaintiff and her associates had a right, in common with all other travellers, to pass at all times and seasons, and over and along which they were in fact travelling at the time of the disaster; also that the defendant corporation had a franchise and right, granted by charter, to lay a railroad track and run trains of cars over and across the said highway; each taking all necessary and proper precautions to use the privilege with due regard to the safety of the other. To the extent of the surface covered by both these different roads, it is manifest that travellers on the highway and the proprietors of the railroad had a privilege in common; but it is equally manifest, from the different modes of use, that both could not use this intersecting surface at the same time. They are utterly incompatible. The duty, therefore, which the parties in such case owe each other, is to take all reasonable precautions, and use all proper skill and care, in crossing this intersecting part, and in approaching thereto, so as not to come to the intersecting point at the same time; in other words, not to come into collision.

Shaw *v.* Boston and Worcester Railroad Corporation.

The plaintiff therefore, in order to maintain her action, must show that she was using proper precaution, and all due care and diligence, at the place of crossing, and in approaching thereto; that the defendant corporation, their officers, agents or servants, did not use proper precaution and due care and diligence, in preparing their track, or in conducting and managing their train, and such as was reasonably necessary for the safety of passengers, at the place of intersection, and such as men of ordinary prudence, skill and experience would use in like cases, by means of which neglect or failure the collision ensued; and that it was not a case of pure accident, where neither party was in fault.

In coming to the report, it seems difficult to decide upon it, by adjudging that any precise decisions or rulings were consistent or not with the rules of law; the different grounds of objection, taken by the defendants, run so much into each other, that it seems necessary to consider one class of objections in reference to the others, and therefore to take a comprehensive view of the whole case.

Since the adoption of the new practice, under which precision, accuracy and fulness, in stating the plaintiff's case, are in a great measure dispensed with in the declaration, it is extremely difficult to say precisely what is within the issue, and considerable latitude of inquiry is admitted on the trial; and therefore, as the true issue or actual matter of controversy may shift a good deal during the trial, it imposes a heavy duty on the judge, so to shape his directions as to meet all those distinct views in which the case may be presented on the evidence.

1. We pass over the first objection of the defendants, that the testimony of Howe should have been admitted to prove that some time before the accident the husband offered the horse for sale, and gave as a reason that he was unmanageable and vicious. We formerly decided that the plaintiff's cause of action not being derived through the husband, she was not bound by his admissions; and we think there is nothing in the doctrine of *res gestæ* to make the supposed offer of sale of any more effect than an admission.

2. The next point raises the great question in the case. It

appears from the report that the defendants offered to show that the horse became terrified, and left the highway, turning to the left, several rods before he reached the crossing, and went off upon the land of the defendants, crossing the open ground between the road and the station, before the collision took place, and that the sleigh was struck by the engine, in attempting to cross the track, ten feet distant from the highway; and they asked the court to instruct the jury that this would prove a case variant from that alleged in the declaration; and was, besides, of great importance, if found by the jury, as showing that the plaintiff's evidence, as to the mode in which the accident occurred, and the care used by her, was not reliable or true. The plan used at the trial was referred to. It was stated in a previous paragraph of the report, that the plaintiff, (who was herself admitted as a witness under the new statute,) and the only witness who was present with her at the time of the collision, and upon whose testimony to prove proper care and caution on the part of the plaintiff the case chiefly rested, had testified that they drove in the middle of the travelled road up close to the crossing, when, as the engine approached, the horse gave one leap, and the engine struck them.

But the judge instructed the jury, " that, having regard to the question whether the parties respectively used due care, the precise place where the collision between the engine and sleigh actually occurred seemed to be of very little importance; that if the plaintiff wandered or unlawfully trespassed upon the defendants' premises, and there met with an accident, she could not recover; but that if the defendants were guilty of negligence in the management of their train, and thereby the plaintiff's horse was frightened, and ran or was driven upon the defendants' land, the defendants would be liable, *under the pleadings in this action*, although the collision had taken place out of the highway, and at the place indicated by the defendants' evidence."

Referring to the plan used at the trial, it appears that the place " indicated by the defendants' evidence," as the place where the horse was frightened, and either turned off from the highway, or was turned off by the driver as a matter of precau-

tion to avoid other danger, was five or six rods distant from the
place of intersection of the highway and railroad; that the left
hand side of the road, as the plaintiff was travelling, was marked
by several trees, on the line separating the highway from the
open grounds of the defendants; and, as it is conceded that the
defendants had complied with the directions of the county com-
missioners, which required them not to build their station within
one hundred feet of this highway, we are to presume that the
space between the road and station was not less than that.

With this view of the evidence, connected with that of the
plan, and the distance of the station buildings from the high-
way, the evidence offered by the defendants tended to show,
that the fright of the horse, which, if these facts were found
true, was the commencement of the chain of causes which led
to the disaster, took place at a distance of five or six rods from
the place of intersection of the two roads, and, considering the
relative speed of the sleigh and the railroad train, when the
latter was probably three or four times that distance from the
place of intersection. It would also tend to prove that the ac-
tual and final disaster, instead of being occasioned by the actual
striking of the sleigh by the locomotive engine on the high-
way at the place of intersection, was actually occasioned by
the horse and sleigh passing out of the highway some rods be-
fore arriving at the crossing, passing into and over the open
grounds of the defendants lying between the highway and the
station, attempting to cross the track at a place some feet off
from the highway, and there being struck by the engine.

Now there are three aspects, under which the facts which this
evidence conduced to prove, if found proved by the jury, would
affect the merits of the controversy, and which therefore required
the attention and direction of the judge:

First. These facts, if proved, would contradict the testimony
of the plaintiff herself, and of the only other witness who was
with her, as to the main facts of the transaction, and so impair
and diminish the weight of the plaintiff's evidence.

Second. These facts, if proved, would show a variance be-
tween the case stated in the declaration and relied upon in the

opening, and the facts as they actually existed ; and if, consist-
ently with these facts, the plaintiff might still show due care on
her part, and negligence on the part of the defendants, and thus
entitle herself to a verdict, it could not be done under the plead-
ings in this action ; and this was a variance in substance, and
not in form.

Third. If, under the great latitude generally allowed in dec-
larations by the present practice, the latter facts could be given
in evidence by the plaintiff, or, if given in evidence by the
defendants, could be relied on to support the plaintiff's case
then a very different issue of fact would be raised, requiring dif-
ferent evidence, and different corresponding directions from the
court, both as to the nature and effect of evidence, and as to the
instructions to the jury in matter of law.

Respecting the first point—that the effect of this evidence
would have been to contradict the testimony of the plaintiff and
the other principal witness—the judge made no remark. Perhaps
none was necessary. The credit of the witnesses was a fact
for the jury, and any remark upon it would rather be a comment
on the evidence, than a direction in matter of law. The remark
made by the judge was, that, having regard to the question
whether the parties respectively used due care, the precise place
where the collision actually occurred seemed to be of very little
importance. This would be true, if the two places were near
each other, and the circumstances of the cause of the disaster,
and the conduct of the parties, were in all other circumstances
alike. But if the difference of place, with the accompanying
circumstances, would lead to a very different inquiry of facts,
respecting the cause of the disaster, and the conduct of the par-
ties, this would render the question of place of great importance.
As we think the two cases or hypotheses would lead to differen
inquiries as to the facts on which the right of the plaintiff to
recover depended, there is reason to fear that this remark had a
tendency to withdraw the attention of the jury from the evi-
dence having an important bearing upon other views of the case.

But the second point more directly affects the real contro-
versy—the variance which this evidence would show between

the case which the plaintiff would claim to establish by it, and that made in her declaration, and stated in her opening.

In general, the objection of variance between the declaration and the proof is regarded as a mere technical objection, and not favored; and where the transaction, out of which the controversy arises, is the same, and the substantial cause of damage is the same, the variance is overlooked. So far indeed is this carried, that in many cases, where a right or claim is defectively stated, the defect is considered as cured by a verdict, on the ground that the facts constituting the merits of the plaintiff's case must have been proved. And often, in such cases, when it is quite certain that an amendment, correcting the supposed defect in the declaration, would not change the course of inquiry, or affect the evidence, or the rules of law applicable to it, an amendment is allowed, without setting aside the verdict, that the judgment may stand regular on the record.

But where the case stated in the declaration and in the first instance opened and relied on by the plaintiff's counsel, and the case subsequently relied on in proof, whether that proof comes from the plaintiff or the defendant, admit and require different kinds and degrees of proof, and the application of different rules of law, there the variance, so far from being formal and technical, is radical and essential; indeed the two may be in many respects repugnant and inconsistent, so that the affirmance of the one would negative the other. In that case, it is the duty of the presiding judge to sustain the objection of variance, as going to the merits of the case, and to decide that the evidence is inadmissible, if offered by the plaintiff, and, if offered by the defendant, inadequate in law to sustain the plaintiff's case.

It appears to us, that upon a view of the whole case, as it appears upon the report, this was a case of the character stated, admitting and requiring very different proofs, in some respect repugnant to each other. To test this, it is necessary to see how the cases would present themselves on the trial.

In the case as stated in the declaration and once opened on the trial, indeed as the whole case presented itself on a former trial and report, the plaintiff relied on the facts, that she was

driving on the highway, with a suitable horse and sleigh, man-aging with due care, and proceeded quite up to the railroad crossing, in the middle of the highway, and that the horse had entered upon the track, so as to be struck by the engine. The case to be proved, it must be all along remembered, is, that the plaintiff was without negligence in using a common privilege, which both could not use together; that the defendants were chargeable with negligence, either in their fixed arrangements, or in the management of their train, and that the accident was caused thereby.

The course of inquiry would be, in making out this case, first as to the care of the plaintiff: Was she travelling with a man-ageable horse, reasonably fit to travel on the highway? In approaching the track, and before entering upon it, was she well acquainted with the road? Did she know that a railroad track was there, or near there? If she did, did she, before permitting the horse to enter upon the track, stop or pause and listen, and look up and down the track, to ascertain by both senses whether a train was within sight or hearing? Was such pausing or stopping such an act as would ordinarily be done by a person of ordinary care and prudence? If a train was within sight or hearing, was it at such a distance, that a person of ordinary care and prudence would think it perfectly safe to cross before the train, or wait till it had crossed? Other points of inquiry would probably arise, in regard to due care on the part of the plaintiff.

On the part of the defendants, the inquiry would be, whether they had complied with the requisites of the statutes designed to secure the safety of travellers; whether they had taken such other precautions in regard to their fixed arrangements, as the safety of passengers would reasonably require at the crossings of highways; whether, in the management of their train, they were running with such reasonable speed as would be proper and suitable on approaching a highway; whether they had made the usual and proper signals; or whether they were chargeable with negligence in these and the like particulars.

Let us now see what would be the state of the controversy and the course of inquiry, if the facts had been proved, which the

evidence given by the plaintiff tended to prove. The case would then stand thus : that the horse was frightened on the highway, at five or six rods before reaching the railroad, that he ran off or was turned off from the highway, on to the open grounds of the defendants between the station and the highway, and in this unmanageable condition ran to and upon the track of the railroad at some feet distant from the highway, and was there struck by the engine after it had crossed the highway. Supposing this to be a case, upon which, if properly stated in a declaration, the plaintiff would have a right to recover, as before, on proving that the plaintiff was free from fault, and the defendants chargeable with negligence, by means whereof the disaster occurred ; the facts to be shown would be very different, and the course of inquiry very different. The inquiry respecting the conduct of the plaintiff would be, whether a horse taking fright at the distant sound of a train, so low as not to be heard by the passengers, was reasonably safe and manageable, and fit to be used on the highway ; and whether, after he had left the highway and gone upon the defendants' grounds, the plaintiff could by ordinary care have checked him, and prevented him from running on to the track. The inquiry on the other side would be, whether the agents and servants of the company did anything, or neglected or forbore to do anything, which could reasonably be required of them as men of ordinary care and prudence, the doing or forbearing of which had a tendency to frighten the horse ; whether the rate of speed, rapid or otherwise, had any tendency to frighten the horse in the first instance, or bring the engine in contact with him, beyond the crossing of the highway ; whether a flagman, watchman or guard on the highway near the track would have had any tendency to save the plaintiff from the accident which actually occurred, if she did not approach the track on the highway, or attempt there to cross, and if the accident occurred at a place out of the highway. We have said that, to some extent, these hypothetical cases are repugnant to each other, and proof of the one would contradict the other. If the horse was all the time, up to the time of the collision, under control and not frightened, and was

under control when crossing the track in the highway, it is repugnant to the supposition that he was frightened at five or six rods before reaching the track, turned off, and crossing land other than the highway, and not under control, attempted to cross the track at a place beyond the highway.

Besides, this last hypothesis is open, as the former hardly was, to the conclusion that neither party was in fault. If, upon the consideration of the whole evidence, the jury should find that the plaintiff and her associates were chargeable with no negligence on their part, and that the defendants were also free from the charge of negligence, then it is a case of pure accident, and the principle of law is very clear, that neither party is responsible for the damage sustained by the other.

This brings us to consider whether there is such a variance, in substance, between the case set forth in the plaintiff's declaration, and the case for the plaintiff, made by the evidence offered by the defendants, if it proved that the accident arose from the fright of the horse at five or six rods from the railroad crossing. And, in looking at the declaration, we find that, after stating that the defendants were proprietors of the railroad, with a branch running to Newton Lower Falls, at Needham, it avers that on the 27th of January 1852 she, with her husband, in a sleigh, was travelling with due care and foresight over the highway in Needham, across which the branch railroad was constructed, and, as they *were crossing the track*, a train of cars, drawn by a steam engine at great speed, belonging to and run by the defendants, *ran into and over* the vehicle, and threw them *upon the track* of the railroad, and ran over them, and broke their limbs, causing the death of her husband within a few hours, and breaking the arms of the plaintiff, and bruising her body and limbs. And subsequently, in describing the negligence of the defendant corporation, the plaintiff says, that the corporation were guilty of great negligence and carelessness, in consequence of which she and her husband were run over and injured *as aforesaid;* that the corporation gave no proper and legal notice of the approach and passing of said train across said highway, at the time of said injuries, nor any proper caution of the exist-

ence of said railroad crossing, and took no precaution to warn them and other travellers, or protect them from injury, as was their duty to do. The plaintiff further says, that said train was run across said highway at an unusual and dangerous speed, and to a point much further than usual or necessary. There is then a summing up of these specifications of the carelessness and negligence of the corporation, resulting mainly in the great and dangerous speed at which the train was run *across said highway* at a dangerous point, and in not guarding properly against collision with those who were *crossing said railroad, over said highway,* whereby the plaintiff was injured.

It is impossible, we think, to avoid the conclusion that this declaration describes one species of accident only, at one place— that of an actual and violent striking of the sleigh, whilst the horse and sleigh, manageable and under the control of the driver, were carefully crossing the track on the highway; and that it describes the negligence of the defendants to consist in not taking proper precautions to prevent the travellers from coming up to the place of intersection and entering on the track, and in running the engine and train with unusual and dangerous speed.

The court are all of opinion that this declaration could not be supported by proof that the horse was frightened at five or six rods distant from the crossing, ran or was driven upon the grounds of the defendants, and, unmanageable by the driver or otherwise, ran upon the railroad track, at a place out of the highway. The cause of the ultimate disaster would be different; the duties of the respective parties would be different; and although it might still be true that the disaster occurred without fault of the plaintiff, and by the negligence of the defendants, if proved, still it could not be recovered for, under these pleadings. We are therefore of opinion that the direction of the judge, that the plaintiff could recover for such damage under these pleadings, if the defendants were guilty of negligence, was not correct in matter of law. It follows therefore, as a necessary consequence, that, as the pleadings now stand, the jury should have been instructed that if they found, on the evidence,

that the accident occurred by the fright of the horse at a distance from the crossing, it would be a finding against the material averments in the declaration, and entitle the defendants to a verdict.

But it is insisted, on the part of the plaintiff, that as the injury, for which the plaintiff claims damages, grew out of the same transaction, substantially at the same time and place, and from the same cause, and the real merits were in fact tried, the variance is matter of form only; that the declaration might have been amended at the trial, either by altering the existing count, so as to make it broad enough to cover either mode in which the accident may have occurred, or by adding another count, setting out the second mode. And she asks leave so to amend now, in order that the judgment may stand right; but insists that this should be done without setting aside the verdict.

All the members of the court agree in opinion that, to warrant a judgment on the verdict, such an amendment would be necessary; but there is some difference of opinion upon the point whether the verdict should be set aside. Some of them are of opinion, that the case was substantially tried on its merits; and this derives support from that part of the report, which states that the judge charged that, if the defendants were guilty of negligence in the management of their train, and thereby the plaintiff's horse was frightened, and ran or was driven upon the defendants' land, the defendants would be liable under the pleadings in this action, although the collision had taken place out of the highway, and at the place indicated by the defendants' evidence.

But a majority of the court are of opinion that the merits of the cause were not tried, if the plaintiff relied on what we have called the second hypothesis, the fright of the horse at some rods distant from the crossing. It appears to them, that the judge's attention was called mainly to the variance between the place of the crossing and the place a little below the crossing, supposing all other circumstances to be nearly or quite the same; and the effect of the charge was, that some difference of the place of the accident would be immaterial.

7 *

The judge did indeed direct the jury, that " if the defendants were guilty of negligence in the management," &c., and *thereby* the horse was frightened. But no evidence appears to have been given in regard to the cause of that fright; it is not even stated that it was caused by reason of the train; but if it was, it was not shown what was the distance between the cars and the horse, or what act the managers of the train carelessly, negligently or unlawfully did, or forebore to do, which caused the fright of the horse; and no instruction was given to the jury as to what conduct on the part of those managers, in this respect, would constitute negligence. For these reasons, and those hereinbefore given, a majority of the court are of opinion that, if the amendment is made, so as to enable the plaintiff to place her claim upon this last ground, it will present new and material issues for the court and jury, which have not been tried, and therefore that the verdict must be set aside.

3. One other objection is taken on the part of the defendants, which at first sight does not seem to be of much importance, but which, taken in connection with other parts of the case, deserves attention. It is thus stated: The presiding judge instructed the jury, that the defendants, though they had complied with all statute regulations, were bound further to use such proper precautions and expedients as would enable travellers upon the highway to pass along thereon in safety, by using due care for their own protection; that the plaintiff was bound to use *ordinary* care, &c.; and that the defendants were bound to use *reasonable* care in the conduct and management of their trains, and that the manner and extent of this care would be such care in the management of their engines and trains, as would be sufficient to enable a traveller upon the highway, who used *ordinary* care, to pass over and by the crossing with safety.

We do not attribute much force to the argument that, by the use of the term " ordinary care " in regard to the traveller, and "reasonable care" in regard to the corporation, the judge intended to prescribe a higher kind or degree of care to be observed by the one than the other. We are inclined to think

that there was a variation in words only, and not in meaning. The true rule undoubtedly is, that the degree and measure of care and capacity are precisely the same; each is bound to take such care as men of ordinary sense, prudence and capacity would take under like circumstances, in the conduct and management of their respective vehicles.

But the instruction embraced in the close of the above paragraph of the report was obnoxious to a more serious objection. According to this direction, taken literally, the law would seem to be, that if the traveller should prove that he was travelling on the highway with due care, and, crossing the track, was struck by the engine, the very fact would show that the defendants had not used sufficient care, in the conduct and management of their engines and trains, to enable the traveller to pass with safety; and, without other proof of negligence, they must be responsible for the damages. This would certainly require a different rule and measure of care in the respective parties—which is not consistent with the rules of law; and would carry the implication that in all cases of actual collision at a crossing one or the other party must be in fault—which is far from being true.

In a case like that which was tried here, where the accident has occurred by the actual collision of the train and sleigh at the intersection of the roads, it may be very probable that one or the other party may be found in fault. But, as has been suggested in another part of this discussion, if the first cause of the accident, the *causa causantis*, was the fright of the horse, at some distance from the place of intersection, at which time the train was, without doubt, at a still greater distance from the same, a case may be well imagined, where it would appear that neither party was in fault in reference to the other, in which case neither would be responsible to the other in damages; as, in the correlative case, the rule is, that when both parties are in fault, and the carelessness of each has concurred in producing the disaster, the law cannot measure the degree of carelessness, and ascertain which is chargeable with the largest share of the blame; in neither case, can either of the parties have an action against the other.

Perhaps, as this part of the charge may have been controlled by other parts which would qualify it, we might not have thought this ground sufficient to set aside the verdict. But as the cause may be tried again, we have thought it best thus to notice it, that, if it should appear that neither party was chargeable with carelessness, as laid down and defined, the jury should be charged, as matter of law, that the defendants would, on such facts found, be entitled to a verdict. There must be not only actual negligence on the part of the party to be charged, but such negligence as actually caused the injury complained of, to enable a plaintiff to recover.

4. The only other subject which will require notice, is that relating to damages. Every one must have felt the extreme difficulty of laying down a rule of damages in a case where the damage is so great as to be incapable of being computed in money. Without any other remarks on the subject, the court are of opinion that one instruction, specially asked for by the defendants, should have been given. It is set forth prominently in the plaintiff's declaration, that her husband was killed by the same carelessness imputed to the defendant corporation, by which she herself was so severely hurt; and perhaps it was impossible to prevent this fact from coming out in the evidence. It also appeared in evidence that the plaintiff was the mother of a family of young children, without property sufficient for their support; and the hardship, suffering and loss which her injuries must occasion, and her helpless condition through the rest of her life, were urged upon the attention of the jury. The counsel for the defendants requested the court to instruct the jury, that the plaintiff was not entitled to any other or greater damages on account of her peculiar domestic or social relations—by which term we understand the loss of her husband, and the fact of her being the mother of a family of young children, without property sufficient for their support. But the presiding judge did not so instruct the jury.

Now, as it has been judicially determined that a widow is not entitled to damages for the death of her husband, by such a cause, *Carey* v. *Berkshire Railroad,* 1 Cush. 475, nor a parent,

in consequence of having dependent children, as was held in *Corning* v. *Connecticut River Railroad,* in Hampden county, (not reported,) we think that, to this extent, the defendants were entitled to the instructions prayed for. *New trial ordered.*

The plaintiff then, by leave of court, amended her declaration by adding a second count, so framed as to avoid the variance at the second trial; and a third trial was had at November term 1858 before *Merrick,* J., and resulted in a verdict for the plaintiff for $22,250, which the defendants moved to set aside for excessive damages. The judge reported to the full court the evidence upon the subject of damages, by which it appeared that the plaintiff lost her left arm, and part of the right hand; that her right arm was broken so that it never united, and she could not since feed or dress herself; that her head was badly cut, one eye injured, several teeth broken, and her body much bruised; her health and memory (which were previously very good) much impaired, and she suffered constant pain.

The case was argued upon this motion to set aside the verdict at March term 1859, before Dewey, Metcalf, Bigelow and Merrick, JJ.

*Hoar & B. F. Butler,* for the defendants. It is conceded that the damages sustained by the plaintiff are not of a kind capable of computation; and that, in order to disturb the verdict, the court must be satisfied therefore that "the damages are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case." *Worster* v. *Canal Bridge,* 16 Pick. 547. *Coffin* v. *Coffin,* 4 Mass. 45. Wherever, applying this rule, the damages appear thus excessive, it is the right and the duty of the court to set the verdict aside, and send the case again to a jury. *Wood* v. *Gunston,* Style, 466. *Whipple* v. *Cumberland Manuf. Co.* 2 Story R. 670. *Collins* v. *Albany & Schenectady Railroad,* 12 Barb. 494. *Clapp* v. *Hudson River Railroad,* 19 Barb. 463. The rule is, that the damages are to be determined by the sound discretion of the jury. This is to be a legal discretion, and whether their verdict

is within the limits of a legal discretion is a question for the court.

What are the elements of damage to be included ? (1.) The plaintiff is to receive but one compensation for all injuries, past and prospective. (2.) Actual expenses, loss of time, loss of capacity to earn money. (3.) A reasonable *solatium*, or satisfaction, for loss of bodily and mental powers, and pain of body and mind, which are the immediate and necessary consequences of the injury.

What are not to be included as elements in determining the amount of damages ? (1.) Not the costs and expenses of litigation. *Barnard* v. *Poor*, 21 Pick. 381. *Day* v. *Woodworth*, 13 How. 363. (2.) Not interest upon the damages actually sustained. Delay in obtaining a judgment, where no tender can be made, is not to be paid for by a defendant. *Sargent* v. *Hampden*, 38 Maine, 581. (3.) Not the peculiar social or domestic relations of the plaintiff. She is to have no more because she was a wife and a mother. *Ante,* 80. (4.) Nothing for any peculiarity in the plaintiff's position in society, or capacity for earning money. *Baldwin* v. *Western Railroad,* 4 Gray, 333. If such elements were to be included, the prices of tickets should be graduated accordingly. (5.) Nothing for conjectural, prospective injury. *Rapson* v. *Cubitt,* 1 Car. & M. 41. (6.) Nothing by way of exemplary or vindictive damages ; for the injury is the result of accident, not of malice or wilful negligence. (7.) Nothing, certainly, on account of the ability of the defendants to pay. *Blake* v. *Midland Railway,* 18 Ad. & El. N. R. 111.

It follows that the plaintiff is to receive only what would be a suitable compensation to the average of mankind for similar losses and injuries, and that, in estimates for the future, allowance is to be made for the future chances of life.

If the plaintiff has received injuries which cannot be estimated in money, that is only another form of saying that she has received injuries for which the law affords her no redress.

This verdict is clearly excessive, immoderate, intemperate, and would not have been determined by a reasonable and dispassion-

ate application of correct legal principles. This appears by the following tests : (1.) The measure which the law gives for an injury which is fatal. *St.* 1853, *c.* 414, § 1. *Theobald* v. *Railway Passengers Assurance Co.* 26 Eng. Law & Eq. 438. *Collins* v. *Albany & Schenectady Railroad,* 12 Barb. 500. (2.) The judgment of the two previous juries who have tried the case. The verdicts have been successively for $15,000, $18,000 and $22,250, all of them enormous, and increasing in such a rapid proportion. (3.) The measure of compensation by which employments involving the greatest risk to life and limb are recompensed. (4.) The ordinary result, on an average, of the whole lives of men and women in this community, exposed to any degree of hardship, suffering and exposure, so far as the acquisition of property is concerned. (5.) The relative amounts of fines, compared with terms of imprisonment, imposed as punishments for crimes. (6.) The amount of an annuity which the damages assessed would purchase for the plaintiff, supposing that the law does not contemplate the provision of an estate for her heirs. (7.) Sums ordinarily assessed against persons of ordinary ability to pay, who may be liable to such a claim. (8.) Which is perhaps the only reliable standard of comparison, as indicating the general sentiment of reasonable and considerate persons, acting under the responsibility of jurors, in this community—the general rate of verdicts, in cases of injuries of the same kind, and as great or greater in degree, in this commonwealth—forming what may be fairly considered the market price of such claims. There have been only three other such cases in which a verdict of more than $10,000 has been rendered for personal injuries, to wit, for $12,000 in *Ostinelli* v. *Boston & Worcester Railroad,* Suffolk, 1841, which was reserved by the presiding judge for the full court, and settled by the parties for $5,000; for $12,000 in *Southwick* v. *Boston,* Suffolk, 1854, which was a case of total destruction of physical power; and for $16,000 in *Brown* v. *New York & New Haven Railroad,* Essex, 1855, which was rendered under the excitement produced by the great disaster at Norwalk, Conn., and after the admission, without objection, of evidence of the value of the plaintiff's

practice as a physician; and neither of those cases therefore affords any precedent for rendering judgment upon the verdict in the case at bar. (9.) The amount of verdicts in such cases elsewhere, and the manner in which they have been regarded by courts of high character and authority *Diblin* v. *Murphy*, 3 Sandf. 19. *Collins* v. *Albany & Schenectady Railroad*, 12 Barb. 492, and cases there cited. *Hegeman* v. *Western Railroad*, 16 Barb. 353. *Holbrook* v. *Utica & Schenectady Railroad*, 16 Barb. 113. *Clapp* v. *Hudson River Railroad*, 19 Barb. 461. *Curtiss* v. *Rochester & Syracuse Railroad*, 20 Barb. 282.

*Choate & Durant*, for the plaintiff. The plaintiff, having been wholly deprived, by the negligence of the defendants, of all power to support or even feed or dress herself, was entitled to recover as damages, (1.) The amount of her expenses for physicians and for support and maintenance, during the seven years since the accident; (2.) A sum which will defray similar expenses during her natural life; (3.) The expenses of an attendant for the past seven years, and during the residue of her life; (4.) A full compensation in money, for every pain of body or mind, which she has been compelled to endure hitherto, and which she must suffer in the future. The verdict returned does not exceed these limits.

But, in order to have it set aside, the defendants must show, not only that the damages were excessive, but that they are so very excessive that the court are bound to infer, from that excess, that the jury were influenced by improper motives and by passion. *Wilford* v. *Berkeley*, 1 Bur. 609. *Duberley* v. *Gunning*, 4 T. R. 651. *Chambers* v. *Caulfield*, 6 East, 244. *Gilbert* v. *Burtenshaw*, Cowp. 230. *Fabrigas* v. *Mostyn*, 2 W. Bl. 929. *Sharpe* v. *Brice*, 2 W. Bl. 942. *Leith* v. *Pope*, 2 W. Bl. 1327 *Leeman* v. *Allen*, 2 Wils. 160. *Beardmore* v. *Carrington*, 2 Wils. 244. *Coleman* v. *Southwick*, 9 Johns. 45. *Sargent* v. ———, 5 Cow. 106. *Ryckman* v. *Parkins*, 9 Wend. 470. *Clark* v. *Binney*, 2 Pick. 113.

This is the third verdict which the plaintiff has obtained; and there is no instance known of a third verdict having been set

aside on the ground of excessive damages. Where, upon a new trial granted for excessive damages, the jury gave the same damages again, a third trial "was moved for, and denied, because there ought to be an end of things;" and in another similar case, "the court said, it was not in their power to grant a third trial." *Clerk* v. *Udall*, 2 Salk. 649. *Chambers* v. *Robinson*, 2 Stra. 692.

The difference between the amounts of the verdicts may well be due to the impossibility of appreciating in advance the probable extent of the injuries. But after seven years of life as a cripple, in a darkened room, it is more evident.

Where, on the whole, substantial justice has been done, the court will not disturb the verdict, although the jury may have taken elements into consideration which should in strictness be excluded, such as lapse of time, costs and expenses. But it does not appear here that the jury have included any such elements.

*Hoar*, in reply. The cases cited, of refusals to set aside a second verdict on the ground of excessive damages, were cases in which the amounts of both verdicts, and the causes assigned for setting each aside, were the same. In 2 Salk. 649, "several cases were cited, which the chief justice [Lord Holt] allowed, that where upon the second trial the jury have doubled the damages, a third trial had been granted."

Here the two first verdicts were set aside for errors in the instructions of the judges, one of which, at the second trial, consisted in permitting the jury to include illegal elements of damages; the declaration has been amended since the second verdict, so as to state a new cause of action; and the damages assessed have been so increased by each successive verdict, as to show that the jury must have added interest and costs and expenses, which were not legal items, or intended to indicate to the defendants that any attempt to try their rights would be followed by an increase in the damages.

At this rate, a railroad corporation may be obliged to pay, in damages for one accident, the whole amount of their capital stock.

THE COURT, after consulting the chief justice, gave

*Judgment on the verdict.*