## HEGEMAN *vs.* THE WESTERN RAILROAD CORPORATION.

Carriers of passengers are bound to conduct their business with all the care which human prudence and skill can suggest. Any thing short of that will make them liable for the consequences.

When an accident occurs upon a railroad, and a passenger is injured, by means thereof, a *prima facie* case of negligence is made out, which, unless it is overcome by proof on the part of the railroad company, showing that they were wholly faultless, will entitle the person injured to recover compensation for the injury.

A railroad company is answerable to third persons, as principal, for neglect or want of skill in any of its agents. Whether the engine or car which it places upon the road for the purpose of carrying passengers has been manufactured in its own workshop, by agents employed directly for that purpose, or by a manufacturer engaged in the business of supplying such articles for sale, the company is alike bound to see that, in the construction, no care or skill has been omitted for the purpose of making such engine or car safe.

If a defect exists, in the construction, which might have been detected and remedied, the company is answerable for the consequences.

Where the injury results from a defect in the construction of the car or engine, the liability of the railroad company depends upon the existence or absence of *negligence;* and that is a question for the jury.

The jury must determine, upon the evidence, whether the defect might have been discovered upon a careful and thorough examination, or whether it was so hidden that such an examination would not have disclosed it.

Where an action is brought against a railroad company, for an injury sustained by a passenger, in consequence of the breaking of an axle, and the plaintiff claims that the defendants are liable, by reason of their omission to provide the car with a *safety beam,* it is proper to admit evidence to show that that improvement had been extensively known and used, prior to the time when the accident happened, and also to show its *utility,* as a safeguard against accidents.

And it is proper for the court to submit it to the jury to say whether, taking into consideration the vigilance required of carriers of passengers, and the publicity of the invention, and of its use prior to the injury, the defendants were or were not negligent, in not informing themselves of the utility and necessity of the invention, and availing themselves of it.

THIS action was brought to recover damages for a personal injury received by the plaintiff while a passenger upon the defendants' railroad. It was tried at the Rensselaer circuit, in October, 1852, before the Hon. W. F. ALLEN, one of the justices of this court. Upon the trial it appeared that the plaintiff, who was a silversmith and watchmaker residing in Troy, on the

9th day of September, 1850, having paid the usual fare, took passage in the defendants' cars at Greenbush for the purpose of going to Boston. When near Hinsdale in the state of Massachusetts, the car in which the plaintiff was seated, by reason of the breaking of an axle, was broken up. Three passengers were killed. The plaintiff had his hip dislocated and was otherwise badly and permanently injured, so as to make him a cripple for life.

The defendants gave evidence tending to show that the axle which broke was made of the best quality of iron and well made; that it had been examined from time to time, and that no external defect could be discovered. But upon examining the iron where it was broken, a *fire crack* appeared, and the iron did not appear to be good. It also appeared upon the trial that an article called a *safety beam* was in extensive use upon railroads in this country, the object of which was, in case an axle should break, to hold the wheel and axle in their place. The car in question was not constructed with this *safety beam*, and it was insisted on the part of the plaintiff that the omission was evidence of negligence. Mr. Bradley, a witness called and examined by the defendants' counsel, and who had been long and very extensively engaged in the manufacture of railroad cars, was asked by the plaintiffs' counsel, upon his cross-examination, when he had first heard of the *safety beam*. To this question the defendants' counsel objected, and the objection was overruled. The defendants' counsel excepted. Mr. Bouton, the master machinist at the Watervliet arsenal, was also permitted to testify that he had seen the *safety beam* on cars at Paterson in New Jersey, 10 or 12 years ago. To this testimony the defendants' counsel also objected, and the objection was overruled and an exception taken. Mr. Vibbard, the superintendent of the Utica and Schenectady railroad, was asked by the plaintiff's counsel how long he had known safety beams in use under railroad cars. To this question the defendants' counsel objected, and the objection was overruled and an exception taken. The witness testified that he had known of the use of safety beams in 1846, certainly as early as 1847; that he had known several instances where the axle

Hegeman v. The Western Railroad Corporation.

had been broken on trucks upon which the safety beam was used; and that the effect of the beam had been to prevent the shaft from falling down upon the track or thrusting up against the car; that with the safety beam, a car may run a good while after the breaking of the axle before any injury occurs; that the safety beam was under most of the cars on the road of which he was superintendent, prior to 1850, but not all. To all this testimony the defendants' counsel objected and the objection was overruled, and an exception taken.

The judge charged the jury, among other things, that the defendants were responsible for all defects in the axle, by the breaking of which the injury had occurred, and which might have been discovered and remedied, to the same extent as if they had manufactured the axle in their own workshop and by their immediate agents. The judge further charged that if the jury should be of opinion that a safety beam was designed and calculated to prevent an injury to passengers, in case of the breaking of an axle, it did not necessarily follow that the defendants were liable, because they had not adopted it, but it would be for them to say whether or not the defendants had been negligent in informing themselves of the necessity and utility of the invention and availing themselves of it, taking into consideration the vigilance required of carriers of passengers for hire, and of the publicity of the invention and of its use prior to and at the time of the injury; and that it was no apology that the safety beam was not in use by the New England roads or by any other particular roads. To each of these portions of the charge the defendants' counsel excepted. The jury rendered a verdict for $9900, in favor of the plaintiff. The defendants moved for a new trial, upon a case.

*D. L. Seymour*, for the plaintiff.

*M. I. Townsend*, for the defendants.

*By the Court*, HARRIS, J. The defendants were carriers of passengers, and as such, were bound to conduct their business

with all the care which human prudence and skill could suggest. Any thing short of this would make them liable for the consequences. Having the exclusive management and control of their cars and road, it was presumable that no accident would occur without some neglect or want of skill or foresight. An accident having occurred, and the plaintiff having been injured by means of such accident, a *prima facie* case of negligence was made out, which, unless it should be overcome by proof on the part of the defendants showing that they had been wholly faultless, would entitle the plaintiff to recover compensation for the injury he had sustained. (*See Holbrook* v. *The Utica and Schenectady Railroad Company, ante, p.* 113, *and cases there cited.*).

This burden of proof was assumed by the defendants. They gave evidence to show that they had purchased the car from a manufacturer of high reputation for the excellence and safety of the cars manufactured by him, and that, after employing all reasonable care and skill for the purpose of detecting any defect in the machinery, the defect in the axle, which was the cause of the accident, had remained undiscovered, and, in fact, could not be discovered by means of any examination which the defendants were able to make.

The rule of law applicable to the evidence, upon this branch of the case, was very accurately stated by the learned judge, at the circuit. After having distinctly laid down the general proposition that the defendants were not liable, if they had exercised all reasonable care and diligence in providing a safe track and a safe engine and cars, and had properly supplied their train with a suitable number of competent and faithful men to take charge of the train, and those men had managed it in a careful and skillful manner, he proceeded to say, in respect to the defect in the axle, that the defendants were responsible for this defect to the same extent as if the axle had been manufactured by themselves. Of the soundness of this rule, I think there can be no doubt. From the very necessity of the case, the defendants are obliged to carry on their business through the instrumentality of agents. Some are employed to construct or keep

Hegeman *v.* The Western Railroad Corporation.

in repair their road way; others to construct or repair their engines and cars; and others, again, to operate such engines and cars upon the road. For neglect or want of skill in any of these, the defendants, as principals, are answerable to third persons. Whether the engine or car which they place upon the road for the purpose of carrying passengers has been manufactured in their own workshops, by agents employed directly for that purpose, or by a manufacturer engaged in the business of supplying such articles for sale, they are alike bound to see that, in the construction, no care or skill has been omitted for the purpose of making such engine or car as safe as care and skill can make it. When such care and skill has been exercised, the defendants' duty, in this respect, has been discharged. If, on the other hand, a defect exist in the construction, which might have been detected and remedied, they are answerable for the consequences. (*See Angell on Carriers*, § 435. *Sharp* v. *Grey*, 9 *Bing.* 457.) In the latter case, an injury had happened to a passenger in a stagecoach, by reason of an original defect in the construction of an axletree. Alderson, J. said: " A coach proprietor is liable for all defects in his vehicle which can be seen at the time of construction, as well as for such as may exist afterwards, and be discovered on investigation; if not, he might buy ill-constructed or unsafe vehicles, and his passengers be without remedy." Park, J. said: " This was entirely a question of fact. It is clear that there was a defect in the axletree, and it was for the jury to say whether the accident was occasioned by what, in law, is called negligence in the defendant, or not."

The cases bearing upon this question, both English and American, have been examined with great clearness and ability in *Ingalls* v. *Bills*, (9 *Metcalf*, 1.) The doctrine stated by Mr. Justice Hubbard, who pronounced the judgment of the court in that case, as the result of his examination, is, that "if an accident happens from a defect in the coach, which might have been discovered and remedied upon the most careful and thorough examination of the coach, such accident must be ascribed to negligence. On the other hand, if the accident arises from a hidden

and internal defect, which a careful and thorough examination would not disclose, and which could not be guarded against by the exercise of a sound judgment and the most vigilant oversight, then the proprietor is not liable." The question of liability is here put upon its true foundation. It is a question of negligence, not of warranty. A question for the jury, not for the court. It being ascertained that the accident, which resulted in the injury for which the action is brought, was caused by a defect in the construction of the vehicle, it must then be referred to the jury to say, upon the evidence, whether "the defect might have been discovered upon a careful and thorough examination," or whether it was so hidden that "the most careful and thorough examination would not have disclosed it." The charge of the learned judge who tried this case was in conformity with this rule. The jury were instructed that, in respect to the defect in the axle, the defendants' liability would depend upon the question whether the defect was of such a character that it "could have been discovered upon a vigilant examination by a person of competent skill, either at the time of construction or afterwards." The true test of the defendants' liability upon this branch of the case, was thus presented.

But the plaintiff, without regard to the question arising upon the defect in the axle, had insisted that the defendants were liable by reason of their omission to provide the car with a *safety beam.* Evidence had been given to show that this improvement had been extensively known and used prior to the time when the accident happened; and also to show its *utility,* as a safeguard against accidents. The evidence, though objected to, was properly received. The defendants were bound to use every precaution which human skill and foresight could suggest to insure the safety of their passengers. If, then, it could be shown that the safety beam was an article of such established utility and so extensively known, that it ought to have been used by the defendants upon their cars, they might justly be charged with negligence in not adopting it. The judge was right, therefore, not only in receiving the evidence, but in submitting it to the jury, to say whether, "taking into consideration the vigil-

Hegeman v. The Western Railroad Corporation.

ance required of carriers of passengers, and the publicity of the invention, and of its use prior to the time of the injury, the defendants were or were not negligent in not informing themselves of the utility and necessity of the invention and availing themselves of it."

Nor do I think the court is called upon to interfere on the ground of excessive damages. It is true the damages awarded by the jury seem quite ample, being nearly twice the amount which could have been recovered if the plaintiff had been actually killed. It must also be conceded that, though the jury have found the defendants chargeable with negligence, it was not a case of very gross negligence. Indeed, the evidence shows no want of ordinary care on the part of the defendants. It is only because the defendants were bound to conduct their business with the greatest possible, care and caution, that they were made liable at all. But, on the other hand, the case shows that the injury sustained by the plaintiff is entirely beyond any pecuniary estimate. An artisan engaged in business, he was confined to his bed for several months, and, from the nature of his injuries, must have been the subject of extreme pain and suffering. Up to the time of the trial he had scarcely been able to leave his house, and, so permanent are his injuries that it is not probable he will ever again possess the ability to provide for the support of himself or his family. Under such circumstances, it cannot be said that the damages awarded by the jury are so excessive as to call for the interference of the court. The motion for a new trial should therefore be denied.

[ALBANY GENERAL TERM, September 5, 1853. *Watson*, *Wright* and *Harris*, Justices.