Clapp *v.* The Hudson River Rail Road Company.

———•◦•———

## CLAPP *vs.* THE HUDSON RIVER RAIL ROAD COMPANY.

The power to send a case back, for the consideration of a second jury, on the ground that the damages awarded by the first are excessive, has been exercised as long as the courts have exercised the power of granting new trials for any cause.

When the damages found by the jury are either so large, or so small, as to force upon the mind the conviction that, by some means, the jury have acted under the influence of a perverted judgment, it is the duty of the court, in the exercise of a sound judicial discretion, to grant a new trial.

Where, by means of a collision which occurred upon the defendants' rail road, the plaintiff, who was a passenger at the time, had his leg broken, between the knee and the ancle, and he received some flesh wounds upon the head, and was in consequence confined to his house about five months, and was obliged

to go on crutches for three or four months afterwards, and the injured leg was left somewhat shorter than the other, but it appeared that at the time of the trial the muscles were well developed, and the plaintiff was restored to his wonted health; *it was held* that a verdict for $6000 damages was excessive; and a new trial was ordered, unless the plaintiff would stipulate to reduce the verdict to $4000.

THIS was an action to recover damages for the injury sustained by the plaintiff in the collision which occurred upon the defendants' road, at Croton, in December, 1851. It was tried at the Columbia circuit, in April, 1853, before Mr. Justice PARKER. It appeared upon the trial that the plaintiff, being a passenger in one of the defendants' cars, at the time of the collision, had the larger or shin bone of his leg broken, between the knee and the ancle. He also received some flesh wounds upon the head. · After the injury he was carried to the house of his brother, at Stuyvesant, where his leg was set, and where he remained about four months, when he was taken to his residence in Valatie. After this, he was confined to his house some three or four weeks, and he used crutches for three or four months after he got out. It also appeared that at the time of the trial he was still lame. Dr. Frary, the physician by whom the leg was set, testified that the injury had produced a curvature of the leg; that it was an inch or more shorter than the other, and not as flexible, and never would be ; that it might get straight, but never would be as elastic as before, and could not be restored to what it was before for usefulness; that he walked lame, and the leg would probably never be restored in length. *Dr. March*, who had been called to see the plaintiff while he was at Stuyvesant, testified that he had measured the leg since the trial had commenced, and that it was shorter than the other by nearly an inch. He also stated that the muscles of the leg appeared to be pretty well developed, and that the plaintiff appeared to be a healthy man. At the time of the injury the plaintiff was keeping a grocery store at Valatie. He also kept a livery stable. Upon this evidence the jury rendered a verdict for the plaintiff for $6000. The defendants, upon a case,

Clapp *v.* The Hudson River Rail Road Company.

moved to set aside the verdict, on the ground that the damages were excessive.

*G. W. Bulkley*, for the plaintiff.

*John Thompson*, for the defendants.

*By the Court*, HARRIS, J.   In *Collins* v. *The Albany and Schenectady Rail Road Company*, (12 *Barb.* 492,) I had occasion to examine the principles upon which courts had acted in granting new trials on the ground of excessive damages, and to refer to the leading precedents on that subject.   The rule which I there deduced, as the result of my examination, and in which my brethren concurred, was, that when the damages found by the jury are either so large or so small as to force upon the mind of every man familiar with the circumstances of the case, the conviction that, by some means, the jury have acted under the influence of a perverted judgment, it is the duty of the court, in the exercise of a sound judicial discretion, to grant a new trial.   In that case, the plaintiff, while a passenger in one of the defendants' cars, had had his foot crushed so badly that for several days his life was despaired of, and it finally became necessary to remove a part of the foot.   He was crippled for life.   Indeed, there was reason to believe that his life was shortened by the severity of the injury, for he had died pending the motion for a new trial.   The jury gave him a verdict of $11,000.   This verdict, in the light of the authorities and precedents on the subject, was deemed sufficiently excessive to require the court to interfere and send the case to another jury, unless the representatives of the plaintiff should elect to reduce the verdict to $5000.   No one, I think, on comparing the facts in the two cases, will say that the verdict in the case referred to was more extravagant than that in the case under consideration.   The injury received by Collins was incomparably more severe, both in its immediate effect and its permanent consequences, than that received by the plaintiff in this action. In the former case the injury had well nigh proved fatal, at the

first. Finally, after much intense suffering, the outside of the foot, including one of the toes, had to be removed. Suffering and infirmity were only terminated by premature death. In this case, the injury was undoubtedly severe, but it was far less serious in its character or consequences. The plaintiff's leg was badly broken, and he, of course, must have suffered greatly. The evidence shows that the leg is somewhat shortened by the injury, and will probably remain so; yet it also appears that the muscles are well developed and the plaintiff is restored to his wonted health. Am I not justified, then, in assuming that a verdict of $11,000 in the one case was not more extravagant than a verdict of $6000 in the other? The same reasons which induced the court, in the former case, to require that the plaintiff's representatives should consent to reduce the verdict more than one half, as a condition of being permitted to retain it, would justify the court in insisting upon a corresponding reduction in this case. Indeed, I think a verdict for half the amount would have been far better adapted to the circumstances of the case.

Every one who has had much experience in the trial of causes, has had occasion to observe the fact that in actions against rail road corporations to recover damages for personal injuries, juries are apt to be far more liberal in awarding damages than in other cases of a kindred character. And yet, I think, every one will admit that this verdict, when compared with other similar verdicts, even in railroad cases, is quite disproportionate. In *Van Namee* v. *The Hudson River Rail Road Company,* which was an action to recover damages for an injury received in the same collision at Croton, and was tried at the Albany circuit, shortly before this action was tried, the plaintiff's ancle had been so severely injured, that he had been confined to his house for several weeks, perhaps months, and being largely engaged in business as a manufacturer, and having a great number of hands in his employ, he was obliged for several months after he was able to leave his house to ride back and forth to his business. It also appeared that, by reason of the fracture or displacement of some of the bones of the ancle, the plaintiff still remained lame at the

time of the trial. The jury gave a verdict of $2100 for the plaintiff, which was acquiesced in by the parties as reasonable and appropriate. In *Holbrook* v. *The Utica and Schenectady Rail Road Company*, (16 *Barb.* 113,) a lady, while seated in one of the defendants' cars, had her elbow struck by some object without, and one of the bones of the arm split and shattered. The jury gave a verdict for $1800. In *Hegeman* v. *The Western Rail Road Corporation*, (16 *Barb.* 353,) the verdict was $9,900. The court, though the verdict was deemed very ample, declined to interfere. But the injury in that case was such as to warrant the largest measure of damages. The plaintiff had been entirely disabled for life. For more than two years which had elapsed between the time of the injury and the trial he had scarcely been able to leave his house. With no capacity to provide for himself or his family, he had nothing to anticipate but pain and helplessness for the remainder of his life. Under these circumstances, it was thought that the verdict, though large, was not excessive. A slight comparison of that case with the one now in hand will be sufficient to show at least that it cannot be regarded as a precedent for sustaining this verdict. I have referred to these cases, rather than many others, because they happen to be fresh in my own personal recollection.

The power to send a case back for the consideration of a second jury, on the ground that the damages awarded by the first are excessive, has been exercised as long as the courts have exercised the power of granting new trials for any cause. It is worthy of remark that the first reported case of a new trial granted upon the merits, was an action for slander, and the new trial was granted on the ground of excessive damages. The case is *Wood* v. *Gunston*. It came before the court in 1655, and is reported in *Style*, 465. The verdict was for £1500. The report states that "upon the supposition that the damages were excessive, and that the jury did favor the plaintiff, the defendant moved for a new trial. Sergeant Maynard opposed it, and said that after a verdict, the partiality of the jury ought not to be questioned, nor is there any precedent for it in our books of the

law, and it would be of dangerous consequence if it should be suffered, and the greatness of the damages given can be no cause for a new trial, but if it were, the damages are not here excessive, if the words spoken be well considered, for they tend to take away the plaintiff's estate and his life. Windham, on the other side, pressed for a new trial and said it was a *packed* business, else there could not have been so great damages, and the court hath power, in extraordinary cases, such as this is, to grant a new trial. Glyn, Ch. J. said "It is in the discretion of the court in some cases to grant a new trial, but this must be a judicial, and not an arbitrary discretion, and it is frequent in our books for the court to take notice of miscarriages of juries, and to grant new trials upon them, and it is for the people's benefit that it should be so, for a jury may sometimes by indirect dealings be moved to side with one party, and not to be indifferent betwixt them, but *it cannot be so intended of the court.* Wherefore let there be a new trial the next term, and the defendant shall pay full costs." This case has always been referred to by judges, when noticing the origin of new trials for erroneous verdicts. (*See Graham on New Trials,* 3.)

But while the power of the court to interfere by granting a new trial, where the damages, as compared with the facts in the case, seem greatly disproportionate, is unquestionable, I admit, that it should be cautiously and sparingly exercised. The jury is the appointed tribunal for examining the facts and circumstances in actions sounding in damages, and awarding compensation. It is justly regarded as a favorite tribunal. The law goes very far in presuming that it is influenced by pure motives. The decisions of such a tribunal ought not to be disturbed upon light grounds. But it is also to be remembered that, in assuming to interfere, the court does not encroach upon the jurisdiction so wisely committed to the jury. It never undertakes to substitute its own judgment, in the place of that which the jury has pronounced. All the power it claims is, to refer the case back to the same tribunal for reconsideration, when its decision appears to have been erroneous.

Every man knows that without this power in the court, great

injustice might, and probably would, at least occasionally, be done. Every experienced lawyer will also agree with me, I think, that more injustice has been done by refusing to interfere with verdicts which were confessedly extravagant, than by an indiscreet exercise of the power. It is in those cases where, the law being unable to furnish the jury with any measure of damages, the whole question is referred to them without any guide or restriction, that the jury is most likely to err. Their feelings, their passions and their prejudices are appealed to by all the arts of eloquence, and sometimes not without success. Under such circumstances, it is no surprising thing that the verdict should occasionally testify to the effects of such influences. When this is apparent it is the manifest duty of the court to set aside the verdict, and submit the case to the consideration of a second jury.

I will not say that this case furnishes evidence that the jury acted under the influence of undue motives. I do not think it does. Nor do I regard the damages as very grossly excessive ; but I do regard them as sufficiently large to show that, whatever the influence may have been, whether it was prejudice against the defendants, or a desire to punish them for the carelessness of their agents, the verdict has been rendered under some misconception of duty, or some perversion of judgment, and that it must result in injustice to the defendants, unless they are protected by the interposition of the court. I have already said, that a verdict for half the amount would have been better adapted to the facts of the case, but I am not inclined to insist upon having the verdict so much reduced. I think the motion should be denied, if within twenty days the plaintiff shall stipulate to reduce the verdict to $4000, and if such stipulation is not given, that a new trial be granted upon payment of costs.

[ALBANY GENERAL TERM, September 4, 1854. *Wright, Harris* and *Watson,* Justices.]