Nicholson, C. J.,
delivered the opinion of the Court.
This suit was brought by A. J. Jones, administrator of George Sweeny, against the Nashville & Decatur Railroad Company, to recover damages occasioned by the explosion of a steam boiler attached to one of the engines of that Company, from which explosion the death of Sweeny resulted. The action is sought to be maintained on two grounds: First, because the explosion was the result of the negligence of the agents of the Company; and second, because the material and structure of the boiler and engine were not such as the Law requires.
*29 Upon the trial of the cause, the jury, rendered a verdict for the plaintiff for $9,500. The plaintiff entered a remittitur for $4,500, thereupon judgment was rendered for $5,000, and the railroad company appealed.
It appears in the evidence that Sweeny was employed by the company as fireman on the locomotive at the time its boiler exploded.
There is testimony in the record tending to show that Sweeny may have contributed to the explosion by improperly screwing down one of the valves a. few minutes before the explosion occurred. On the other hand, there is testimony tending to show that the explosion was produced by the negligence of the engineer on the locomotive, in not having a sufficiency of water in the boiler; and also, that the. material of the boiler was of bad quality, and its construction defective. »
On the several matters of fact both sides adduced proof, and under the charge of the court the jury found the verdict for the plaintiff already referred to. The finding indicates clearly that the explosion was not produced by the negligence of Sweeny, but that it must have resulted either from the negligence of the engineer in not having a sufficiency of water, or from the negligence of the company in not having an engine and boiler of the character to exempt them from liability for the explosion.
There is no such preponderance of the evidence against' the verdict (if, indeed, there is any, which we do not decide) as would justify this court in disturbing the verdict. It must, therefore, stand, unless *30 there was some error of law in the instructions by the court to the jury.
Several errors in the charge of the court are relied on for a reversal, which we will proceed to notice:
1. It is said that there is error in the following instruction to the jury:
“If the accident happened as the consequence of the carelessness or imprudence of the deceased, or from his unauthorized and improper interference or intermeddling with the safety valve; or if the accident was the result of the conjoined carelessness of the deceased and the defendant, or any of its agents, then the plaintiff could not recover.”
The objection is not that the instruction is not •correct as far as it goes, but that the Judge ought to have gone further, and instructed the jury that if the accident happened as the result of tire carelessness of the deceased, conjoined with the defective character of the boiler, the plaintiff could not recover. No such additional instruction was requested; and therefore if the instruction would have been . proper, the Judge cannot now be put in error. But the instruction, as requested, could not have been properly given unless it had contained the qualification that the deceased must have known of the defective character of the boiler.
2. It is said there is error in the following instruction :
“If the defects in the boiler were known to the deceased, and he accepted service, or continued in the same on said engine with a full knowledge of such defects, the plaintiff could not recover.”
*31 It is objected that the Judge ought to have gone-further, and told the jury that if the deceased had equal means of knowledge with the defendants to have discovered the defects, then he could not recover. It is a sufficient answer to this objection, that the defendants made no request of the Judge for such additional charge. '
3. It is next objected to the charge that the Judge instructs the jury that “if they shall find that the injury was caused by the carelessness of an employe of that company, occupying a superior and commanding ’ position to that held by the deceased, then the plaintiff will be entitled to recover.” The question raised by this objection was thoroughly examined, and the authorities fully reviewed by this court in the case of the Nashville & Chattanooga Railroad Company v. J. M. Carroll, adm’r, etc., decided at the recent term at Knoxville. Judge Freeman, delivering the opinion of the court, said:
“’We concede the correctness of the general rule as established by all the English, and nearly all the American authorities, that a servant or employe, who is injured by the negligence or misconduct of his fellow-servant or employe, can maintain no action against the master for such injury. On this proposition there is and can be no difficulty. The question is, Who are, in the proper sense of the term, fellow-servants or employes? In cases of employes of railroads, are all fellow-servants and employes who happen to be employed by the same master or company, to do work of any kind in any department of the varied em *32 ployments of snob corporations, whether they, by such contract, have any necessary connection, the one with the other, by virtue of such contract or not, to be included within the rule? This is the question on which there is diversity of opinion, and upon which we are to decide in this case.
“We hold that on this point the rule requires, on sound principle, to be applied with proper limitations, based upon fair terms of the contract itself, and sound legal analogies. The rule, we hold, cannot be made to apply as between an employe in one department of the work of a railroad company, separate, distinct, and apart from the work of the other employe by whom he is injured, which has no immediate or necessary connection with the work in which the injured employe is engaged, further than being in employment on the same road and by the same company, where the injury is caused by the negligence or carelessness, or want of skill of. such employe or agent of the company in the performance of the work of such company. This rule is supported by authorities of equal weight, though less in numbers than the contrary rule, and, in our judgment, by the greater weight of reason and sound principle.”
Mr. Redfield has been cited as the authority for the opposite rule, but in his work on Railways, vol. 1, 532, note to case of Nashville & Louisville Railroad v. Collins, it will be seen that the weight of his judgment is in favor of a modification of the rule. He says: “It is safe, therefore, to state, after a review of the authorities, that all the cases, both *33 English and American, maintain the general rule to the extent of those who are strictly “fellow-servants”' in the same department of service. And when this is not the fact, but the employes are so far removed from each other that the one is not bound to obey the directions of the other, so that the superior maybe fairly regarded as representing the master; we-think it more consonant with reason and justice to treat the matter as not coming within the principle of the rule.” In conclusion of this note he says: “But we would be content -to treat all subordinates, who were under the control of a superior, as entitled to hold such superior as representing the master,, and the master as responsible for his incompetency or misconduct. "We should,” he adds, “regard this as the more salutary rule, upon the whole, than the present one.”
Judge Freeman said: “We cannot see that any other rule than the one here indicated can be fairly arrived at, unless we discard in favor of railroad corporations the general principle of respondeat superior, which has been so long and uniformly adopted in cases where the injury occurs by the act of the agent or servant in performance of the work of the superior,, and an injury is done to a stranger.”
This case settles the rule and disposes of the obr jection to the charge, which was in accordance with the rule laid down by Judge Freeman.
4. It is insisted that there is error in the following instructions to the jury:
“ The company was bound to see that the boiler *34 of the engine on which the deceased was employed was perfect, and properly constructed, according to the present state of the art, and that the engineer and other employes with whom he was associated were men of ordinary skill' and care, and was bound to provide and use all necessary means, appliances, and precautions to prevent accidents and render said employment safe; and if, in consequence of any omission, carelessness, or want of diligence in these regards, on the part of the company, an accident happened by which the said employe was injured, the defendant is liable to the plaintiff for the same.
“Was thé boiler in question such a one as the law now charged required? If not, then the company is responsible for any accident resulting from its defects; but upon this condition, however, that the defect was of such a character that it could have been discovered upon a critical and vigilant examination by a person of skill, either at the time of its construction or afterward.
“And in reference to the defect, the defendant is responsible to the same extent as if the boiler had been manufactured in its own shops; and therefore if the manufacturer knowingly uses imperfect or unsuitable iron in its construction, or if it was improperly or unsafely constructed by them, or if the defect in the material or the construction could have been discovered by them or the company, by the application of the ordinary tests and the proper skill, the company would be responsible for any accident or injury resulting therefrom.
*35 “And on the other hand, if the accident arose from some hidden or internal defect, which a careful and thorough examination by a person of competent skill, and an application of the proper tests would not disclose, and which could not be guarded against, by the exercise of a sound judgment, and the most vigilant examination, then the defendant would not be liable.”
These instructions are based substantially on the opinion of the Supreme Court of New York, in the case of Hegeman v. the W. R.R., 16 Bar., 353. In that case the court laid down the rule for determining the liability of the railroad company to a passenger for injury sustained in consequence of a flaw in one of the axles of a car. It appeared that careful examinations had been made without discovering the flaw; but it might have been discovered by means of a test which manufacturers were in the habit of applying, but which had not been applied in that case. Judges Denio and Marrin dissented from the opinion of the majority of the court, on the ground that as the manufacturers were not servants of the company, the company could not be held responsible for their negligence. This decision was afterward affirmed in the court of appeals.
The case of Hegeman does not go upon the ground of a general warranty, like that which the law imposes upon the common carrier of goods, but it virtually makes the carrier warrant the passenger against the negligence of the manufacturer. 4 Am. L. Review, 85 (note).
*36 It is observed that in the instructions quoted in the ease before us, the Circuit Judge says the defendant is responsible to the same extent as if the boiler had been manufactured in his own shops, and if the defects in the material or in the construction could have been discerned by the manufacturers of the company by the application of the ordinary tests, and the proper skill, the company would' be responsible; or, as expressed in another part of his charge, “upon the-condition, however, that the defect was of such a character that it could have been discovered, upon a critical and vigilant examination by a person of skill, either at the time of its construction or afterward." It is clear that under these instructions the jury might understand that the railroad company was responsible for the negligence of the manufacturers of the engine and boiler, in using bad iron, or otherwise turning out a defective engine and boiler. In other words, that the company, when they employed the deceased, warranted him against the negligence of the manufacturers of the engine. This is the rule as impliedly laid down in the Hegeman case, and as expressly in Alden v. The New York Central R.R. Co., 26 New York, 102. In referring to the Hegeman case, in the note to Redhead v. the Midland Railway Co. (2 Exch.), 4 Amer. Review 85, the editor says: “This decision went much further than any that can be found outside of New York, as it virtually makes the carrier warrant the passenger against the negligence of the manufacturer.” They add, after reviewing the authorities, that ** outside of New York the current of American de- *37 cisión is very strong in the direction of the English —the direction indicated by the opinion of the court in Redhead v. the Midland Railway Co.” In that casé the court said: “We are of opinion, after consideration of the authorities, that there is no such contract, either of general or limited warranty and insurance entered into by the carrier of passengers, and that the contract of such a carrier, and the obligation undertaken by him, is to take due care, including in that term the use of skill and foresight, to carry the passengers safely. It of course follows that the absence of such care, in other words negligence, would alone be a breach of this contract.”
In Shearman & Redfield on Negligence, Sec. 268', it is said that “where the .courts have declined to follow the stringent rule adopted in New York, they have, nevertheless, generally held the carrier to the duty of extreme care in the selection of his vehicle, and the examination of all its parts. He- must do all that any one in his position could d‘o to guard against defects which would render the vehicle unsafe.”
The rule was laid down with much clearness in the case of Ingalls v. Bills, 9 Met. 1, as follows:
“Carriers of passengers for hire are bound to use ’the utmost care and diligence in the providing of safe, sufficient, and suitable coaches, etc., in order to prevent those injuries which previous care and foresight can guard against; and that if an accident happens from a defect in the coach which might have been discovered and remedied upon the most careful and< thorough examination, such accident must be ascribed? *38 to negligence, for which the owner is liable in case of injury to a passenger, happening by reason • of such accident.”
It thus appears that the difference between the rule in New York and that in England, and most of the States is, that in the former the carrier is responsible for consequences of defects in their vehicle, irrespective of any question of negligence on their part, while in the latter, the responsibility of the carrier for defects in his vehicle depends upon the question of negligence on his part.
It is seen from the charge of the Circuit Judge already quoted, that he does not follow the most stringent rule as it exists in New York, nor does he follow the English rule, but goes beyond that rule in, this — that he virtually makes the railroad company warrant its machinery against ány defect therein, which the manufacturers might have discerned by proper care- and vigilance.
The question then arises whether any rule on this subject has been recognized in this State, and if so, whether it is sustained by reason and authority?
In the case of the Nashville & Chattanooga R.R. Co. v. Elliott, 1 Cold. 616, which was an action for injury to the person of Elliott, who was employed as. a hand on a locomotive engine of the company, Judge McKinney said: “Although railway companies are not held liable as insurers of the safety of passengers, as they are of common carriers of goods, and of the-baggage of passengers; yet the rule in regard to the degree of care and vigilance exacted from them as. *39 laid down in several cases, is an extremely rigorous one. They are held bound to the highest degree of care and diligence, and answerable for injuries to passengers resulting from the slightest negligence or want of skill or prudence,” for which he cites Redfield on Railways, ch. 17, Sec. 1, and notes; 14 How. R. 483.
He proceeds: “ But as to the servants of the company the rule is different. But if he (the servant) voluntarily engages to serve, in view of all the hazards to which he will be exposed, it is well settled that as between himself and his employer, he undertakes to run all the ordinary risks of the service; and this includes the risk, of injuries, not only from his want of skill or care, but likewise the risk of injuries from the negligence of his fellow - servant. This doctrine, however, must be taken with the qualifications that the employer must take care not to expose the servant to any risk by associating him with other servants wanting. in ordinary skill or care, or by the use of unsafe or unsuitable machinery, or other culpable negligence.” Redfield’s Railways, ch. 17, Secs. 1, 2, 3, and notes.
In this opinion of Judge McKinney we have the distinction drawn between the liability of a railroad company to its passengers and to its employes or servants. As to passengers, they are held bound to the highest degree of care and diligence, and are answerable for injuries resulting from the slightest negligence or want of skill or prudence; but as to their employes, they undertake to run all the ordinary risks of the service; but the company must take care not *40 to expose them to any risk by associating them with other employes wanting in ordinary skill or care, or by the use of unsafe or unsuitable' machinery, or other culpable negligence.
The questions involved in the case were whether the engine of the company was safe and suitable, and whether the engineer used ordinary skill and care. The Circuit Judge had charged the jury that “the company were bound to see that the road was in good order and safe, and that the engines, etc., were perfect, and properly constructed, according to the present state of the art. But if the injury was occasioned by an imperfection in the road or machinery, the company would be responsible for it, provided they had knowledge of such defects, or, in the exercise of ordinary care, might have known it.” And further, “that if either the road or machinery was defective, and that fact was known to the engineer, that would be knowledge on the part of the company.”
An exception was taken to so much of this charge as stated that “the company was bound to see to it that their engines and machinery were perfect, and constructed according to the present improvements in the art.” In disposing of the exception, Judge McKinney said: “The principle laid down in the charge is sustained by several authorities. The general doctrine is, that in proportion to the importance of the business, and the perils incident to it, it is the obligation of the company to see that the engines and apparatus are suitable and sufficient, and as safe as care and skill can make them.”
*41 In support of the general doctrine so laid down, Judge McKinney refers to the case of Hegeman v. The Western Railroad, 16 Barb., 358, in which the court held that “whether the engine or car which is placed on the road for the purpose of carrying passengers, has been manufactured at its own shops, or purchased of other manufacturers, the company is alike bound to see that in the construction, no care or skill has been omitted for the purpose of making such engine or car as safe as care and skill can make it.”
It is observed that the doctrine of the Hegeman case applies expressly to the responsibility of the railway company for injuries to passengers. Judge McKinney adopts and recognizes it as applicable alike to the responsibility of the company for injuries to employes of the company; nor do we see any sound reason for a difference of doctrine, whether the injury has been sustained by a passenger or by an employe.
It follows that, according to the doctrine as recognized and adopted in the case of the Nashville & Chattanooga R.R. Co. v. Elliott, it is implied by the contract between a passenger or employe and the company, that the company is bound for any injury that results from defects in the engine or machinery of the company, if such defects existed at the time of their construction, and might have been discerned by the manufacturers, by the exercise of due care and skill; although the company, at the time of purchase, or afterward, failed to discover the defects, after resorting to the usual and proper tests. The Circuit *42 Judge followed this construction of the contract in his instructions to the jury.
We have already seen that the doctrine of the liegeman case is in conflict with all the English and most of the American authorities, outside of New York, and the question now is, whether we shall adhere to it as recognized in the case of Elliott v. Nashville & Chattanooga R.R. Co., or dissent from that case on this particular point, and adopt the rule which seems to have the support of the current of authorities?
We are of opinion that the doctrine of the case of Hegeman is justly obnoxious to the exceptions taken to it. The legitimate obligation imposed upon the company by its contract with a' passenger or employe is, that its engine and apparatus are then suitable, sufficient, and as safe as care and skill can make them, and that the company will be responsible for any injury resulting from defects therein, which might have been discovered by the company or its agents, by the proper care and skill in the application of the ordinary and approved tests. If the defects are such that they could not be discovered by the company or agents after a careful and skillful application of the ordinary and approved tests, then the company cannot be held responsible, although it may appear that the defects might have been discovered by the manufacturers, by applying the proper tests. We hold it unreasonable to assume that the company not only contracts to be responsible for its own negligence, but also for that of the manufacturers
*43 We cannot undertake to determine wbat influence,, if any, may have been produced on the minds of the jury by the instruction given by the judge, to the effect that the company virtually warrants the employe against the negligence of the manufacturer.
We see by the evidence that there was conflict in the testimony as to the question, whether the boiler which exploded was manufactured of bad materials and defectively constructed. If the jury believed from the evidence that there was a defect in the manufacture of the boiler, we cannot tell whether, under the charge, they may not have considered that fact sufficient to fix the liability of the company, without looking further into the testimony to see whether the company exercised due care and vigilance in resorting to the proper appliances and tests to ascertain whether the boiler was perfectly and properly constructed, according to the present state of the art; that is, whether it was suitable, sufficient, and as safe as care and skill could make it at the time of the contract with the employe.
For this error in the charge, therefore, we are-constrained to reverse the judgment and grant a new trial.