CATHARINE HAROLD, Respondent, *against* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellants.

(Decided December, 28th, 1885).

In an action for damages for personal injuries to plaintiff caused by defendant's negligence, it appeared from the evidence that the injuries received were very severe, consisting of external lacerations and serious internal injuries, the results of which were to confine plaintiff to her bed for several months before she was able to walk about her room; to compel her to have medical attendance for several months longer; to cause her very great pain, from which she had not been free at any time since the injuries, and from which she would probably suffer for her life, she being about 35 years of age; to render her incapable of performing her ordinary household work, or of walking with any comfort, or of sitting for any length of time without pain; and to unfavorably affect her general health and strength, by producing nervousness; and other harmful consequences. *Held*, that a verdict for plaintiff for $8,000 damages should not be set aside as excessive; that although the verdict of the jury for plaintiff upon a former trial, judgment upon which had been reversed, was for $4,500, the increase in the amount did not of itself indicate that the subsequent jury were influenced by passion or prejudice, especially as there was not the same reasonable certainty of the permanent effects of the injuries upon the first trial that there was upon the last one; and although plaintiff's earnings at the time she was injured were but $30 per month, and she was, at the time of the trial, supporting herself by letting out rooms in a house hired by her.

Physicians testifying as experts on the trial of such an action were asked what was the usual effect of a certain internal injury, and whether it usually permanently affected the health and strength of the patient. *Held*, that such questions were admissible.

The court having properly instructed the jury, upon the evidence, that plaintiff knew that the business in which she was employed in defendant's yard, at the time she was injured, was a hazardous one, and that the duty devolved upon her to use such care as an ordinarily prudent person would take when engaged in such a business, refused to give a further instruction requested by defendant, that the plaintiff took the risk of danger to which she might be exposed from the use and management of the yard in the ordinary way. *Held*, that the refusal was proper; since if the ordinary way was to be habitually careless, this would form no excuse.

APPEAL from a judgment of this court entered upon the verdict of a jury and from an order denying a motion for a new trial.

The facts are stated in the opinion.

*Frank Loomis*, for appellant.

*Edward P. Wilder*, for respondent.

CHARLES P. DALY, Chief Justice.—In the case of Young against the defendants, which was for an injury caused by the same accident, and arising under the same circumstances as in the present case, the General Term of this court held that the question of the defendants' negligence, and of contributory negligence, were not for the court, but had been properly left, upon the evidence, to the jury (see *ante*, p. 294). The two cases are so substantially alike in respect to the evidence upon these two questions that the decision of the General Term in the one case is controlling in the other.

One of the principal grounds now relied upon by the defendants for a new trial is that the damages are excessive. As the jury in the former case gave but $4,500, and the jury in the present have awarded $8,000, it is urged that this increase in the amount by the last jury " indicates, of itself, passion and prejudice." I tried the former case, and my impression at the time was, that the amount of the verdict was much less than might have been reasonably expected; and that a subsequent jury should give a much larger amount does not necessarily warrant the conclusion that they must have been influenced by passion or prejudice.

The counsel for the defendant argues that as the plaintiff's wages at the time of the accident were but $30 a month, " an impartial mind cannot fail to regard the $8,000 awarded by the jury as grossly excessive." This does not necessarily follow. The measure of damages is not the amount that the plaintiff was able to earn before the injury, as distinguishable from what she may be able to earn now; but a very material consideration upon the question of damages in cases like this, is the pain and suffering endured; and the evidence here is that the pain which the plaintiff suffered

" was terrible." Her companion and co-worker, who was by her side, was killed by the collision, and the injury she received was very severe. She was lacerated externally and injured internally; " so badly hurt," as she testified, " that her sister did not know her," and that she was " hurt all over, internally." She was taken to the hospital insensible, and after being there two weeks was taken home, and was confined to her bed for four months. It was three months after this before she was able to walk about her room, and the physician was in attendance upon her for eight months. Not only was the suffering she endured very great, but the jury was justified in inferring, from the evidence upon the last trial, that she will probably be a sufferer for life. She testified that there had been no time since the accident that she has been free from pain; that she never had such pain before; that she suffers all the time from the injury received; that since the accident she has had symptoms of internal injury that she did not have before; that in one way she suffers terribly, that is from a falling of the womb and pain in her side; that she has had " fainting spells ever since she was hurt;" that " sometimes it is not safe for her to go out in the street," because she is " liable to have something come over her heart, and to fall in the street;" that this has happened several times since the accident, and never happened before; that she never had any trouble with her womb before the accident, and that her general health before that " was very good." The physician described to the jury her condition as respects her internal injuries, which were attended by the discharge of blood and mucus from the lower part of her body. He found that there was a falling of the womb, so much so that it protruded from the body, and when he attempted to replace it, after examining her, she suffered so much pain that he could not do so at that time. He said that she was suffering, at the same time, from pleurisy in the left side, and from inflammation of the bowels, and that she had had inflammation of the bowels, more or less, for four months; that during the first month he visited her he had to keep her under anodynes, at

Harold *v.* New York Central &c. R. R. Co.

least twice a day, and for the next month, at least once a
day.   He stated that when he last made an examination of
" her uterine troubles " he formed an opinion as to their
permanent or temporary character ; and being asked what
that opinion was, he said :   " I consider that she was inca-
pable of performing her household work, or to walk with
any degree of comfort, or to take exercise, or any pleasure ;
she could not sit for any length of time without pain in
her back, and that she had been permanently injured by the
falling of the womb, as it could not be cured, it could only
be relieved ; that the effect of this injury upon her general
health and strength was to produce nervousness ; that if
she married again she could not perform the regular func-
tions of married life without a great deal of pain."

But it is unnecessary further to refer to the testimony
under this head : sufficient has already been cited to show
the nature of the injury, and the effects of it ; and it is not
for the court to undertake to measure or judge what should
be a proper pecuniary recompense to the plaintiff, who is
now but 35 years of age, and who may possibly have to en-
dure for the rest of her life what she had to endure up to
the last trial.   What she ought to recover must necessarily
be left to the judgment of a jury; and the court are not
called upon to interfere and set aside the verdict because a
jury, upon the first trial, gave but $4,500, and a jury, in the
second, have given $8,000, especially as there was not the
same reasonable certainty of the permanent effects of the
injury upon the first trial that there was upon the last one.

The defendants were not satisfied with the very moderate
verdict then rendered.   They applied for a new trial, and
obtained one, for a technical error in the charge of the judge,
from which the court, in granting the new trial, under the
very technical rules that now prevail in respect to the grant-
ing of new trials, thought it probable that no harm had
occurred to the defendants, and expressed its regret that
it had to disturb the verdict, as it was a very proper one.
That the result of granting the new trial has been differ-
ent from what the defendants probably expected—that the

second jury have greatly increased the damages—is no reason why we should order a new trial, upon the assumption that a third jury will or ought to give less.

Where actions of tort are brought to recover damages for personal injuries, courts will rarely grant a new trial upon the ground of excessive damages. Chief Justice WILMOT, in *Huckle* v. *Money* (2 Wils. 206), in referring to applications in such cases for new trials, said that the few cases to be found in the books " shows that courts of justice have most commonly set their faces against them ; " that " the courts interfering in these cases would be laying aside juries." And Lord MANSFIELD, in *Gilbert* v. *Burtonshaw*, Cowp. 230, in laying down the rule that has since been followed, that new trials should be granted for damages which manifestly show that the jury had been actuated by passion, partiality or prejudice, said : " But it is not to be done without very strong grounds indeed, and such as carry internal evidence of intemperance in the minds of the jury ; " that " it is by no means to be done where the court may feel that if they had been on the jury they would have given less damages, or where they might think the jury themselves would have completely discharged their duty in giving a less sum." And in *Smith* v. *Woodbine* (1 C. B. N. S. 662), Justice CRESWELL, in remarking that the amount of damages in such actions was a question peculiarly for the jury, observed that he " always felt it very difficult to interfere with their verdict upon the question of amount." And Lord MANSFIELD remarked, in the case above quoted, that " unless the damages are flagrant, outrageous and extravagant, it is difficult for the court to draw the line."

In *Hewlett* v. *Crutchley* (5 Taunt. 277), an action for malicious prosecution, in which the plaintiff recovered £2,000, Chief Justice Sir JAMES MANSFIELD, in referring to the application for a new trial upon the ground of excessive damages, said that it was exceedingly difficult to estimate damages ; that you may take twenty juries and every one of them will differ from £2,000 down to £200 ; that he always felt " that it was extremely difficult to interfere and

say when damages are too large." And in that case he puts this test—whether any rational man of character would, for £2,000, put himself in the plaintiff's situation. If not, then the damages, he remarked, are not excessive; and if this test be applied to the present case, the question might well be asked whether any rational person would undergo an injury such as the plaintiff sustained, with all the consequences that have followed it, for the sum of $8,000. The jurors, whose province it is to fix the amount of the damages in such a case, would naturally apply some such test as the one suggested by the distinguished judge, and in doing so one jury may differ very widely from another; and the fact that a second jury gives a much greater or a much less amount than the first is not, in itself, a reason why their verdict should be set aside. The amount, in any event, has to be left to the discretion of a jury, and it is only, as Lord MANSFIELD said, when it is flagrantly outrageous and extravagant that courts should set the verdict aside, and this is not, in my judgment, such a case.

More than twenty years ago, in *Hegeman* v. *The Western R. R. Corp.* (16 Barb. 359), when the value of money was much greater than it is now, the jury in an action for personal injury gave the plaintiff $9,900, which verdict the court refused to set aside as excessive. The case, as stated by Judge HARRIS, was that of an artisan who was confined to his bed for several months, and who, from the nature of his injuries, must have been subjected to extreme pain and suffering, who, up to the time of the trial, had scarcely been able to leave his house, and whose injuries were so permanent that it was not probable that he would thereafter be able to provide for himself and family. The court said that the injury sustained by him was beyond any pecuniary estimate, and that it could not say that the damages awarded by the jury were so excessive as to call for its interference.

In the present case, the plaintiff was unable to do anything for ten months. She then, to support herself, undertook to keep a little store, but was obliged to give it up because she was not able to remain upon her feet. She tes-

tified that she had done very little work since, as she was not able to use one of her hands; that she cannot use it fully as she cannot clasp anything tight; and if, she says, she does "the least bit of work at all, it swells up." At the time of the trial she was supporting herself by letting out rooms in a house that she hires from month to month. The case is not as strong, perhaps, in respect to the permanent effects of the injury, as the one quoted, as the plaintiff has been able to do something for her support; but the amount recovered in that action was much greater, the value of money being now very much less than it was then.

Many exceptions were taken by the defendants, embracing exceptions to the striking out of evidence, to the refusal to strike out evidence, and to the admission of evidence, all of which I have gone over, and none of which, in my opinion, were well taken. The questions put to the experts, Drs. Molony and Ward, as to what is the usual effect of a falling of the womb, and whether it usually permanently affects the health and strength of the patient, was within the rule of law laid down in *Strohm* v. *New York, L. E. & W. R. R. Co.* (96 N. Y.), that is, evidence tending to show that there was such a degree of probability of the future consequences of the accident as amounts to a reasonable certainty; and the questions put were not of that speculative and hypothetical character for which the verdict was set aside in that case by a divided court—a case that went very far in excluding evidence by experts of the probable and possible consequence of an injury, and which should not, in my opinion, be carried beyond what was strictly decided in it.

Before the judge charged the jury, he was requested by the defendants to charge fourteen propositions, and exceptions were taken to his assumed refusal to charge the sixth, seventh, eighth, eleventh and fourteenth requests.

The sixth request was charged as far as the defendants were entitled to it, that is, that the plaintiff knew that the business in which she was employed was a hazardous one; and that the duty devolved upon her to use such care as an

ordinarily prudent person would take when engaged in such a business, the defendants' proposition being that she took the risk of danger tő which she might be exposed from the *use and management of the yard in the ordinary way*, which last qualification the court very properly refused to assent to, remarking that if the usual and ordinary way was to be habitually careless, it would form no excuse.

As respects the seventh and the eighth propositions, the court charged all that the defendants were entitled to.

To the eleventh and fourteenth propositions, the defendants were not entitled.

The two exceptions to the charge were not, in my opinion, well taken.

The judgment should be affirmed.

LARREMORE and J. F. DALY, JJ., concurred.

Judgment affirmed.