CHARLES COPPINS, RESPONDENT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Duty of a railroad to its employees, as to using new and improved switches —the question should not be left to the jury.*

On May 10, 1880, the plaintiff, who had been employed by the defendant as a brakeman for many years, was injured by the derailment of an express train on which he was working, by reason of a switch which had been negligently left open. At the place where the injuries were sustained the main tracks of the defendants were crossed by a branch, known as a cross-over, which was kept by the defendant for the purpose of the business passing from a freight-house, coal depot and water tank on the north side of the tracks to an engine house and other structures on the south side. The switch which was left open had been in use for passing trains from one side of the tracks to the other, and had served the purposes for which it was designed and safely carried trains across, and had proved to be an adequate instrumentality for accomplishing that purpose.

Upon the trial the plaintiff claimed that a certain safety switch, known as the "Cook switch," should have been used in connection with a trailing cross-over and set for such cross-over, and that if this had been done the train would have passed along in safety notwithstanding the misplaced switch. The court left it to the jury to say whether the switch in use was a proper and suitable instrumentality, or whether it was not the duty of the company to have used a different one that would serve the purpose of meeting all exigencies brought about by the negligence of the co-employees of the plaintiff. *Held,* that it erred in so doing.

That it should not be left to the jury to say what switches, patented articles or contrivances, shall be used by a railroad company, in order to escape liability for injury to an employee caused by the negligence of a co-employee.

APPEAL from a judgment in favor of the plaintiff entered on the the verdict of a jury for $15,000, at the Onondaga Circuit, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried, and from an order granting an extra allowance.

The plaintiff, who was a brakeman in the employ of the defendant, and had been in its service quite a number of years, was injured on May 10, 1880, by the derailment of an express train coming west on track No. 2, occasioned by a switch at St. Johnsville having been left open. On the north side of the road there was at that

place a freight-house, coal depot and water tank, and on the south side of the tracks, an engine house and other structures.

A branch, known as a cross-over, was kept by the defendant for the purpose of the business passing across the main tracks from the north side of the engine house and from branches on the south side of the main tracks. It was what is known as a direct cross-over and was connected to the main track by switches. The switch connecting the cross-over with track No. 2, on which plaintiff's train was running, had been unlocked. When the train reached the switch it took the cross-over and passed toward track No. 1 and, before reaching track No. 1, as defendant claims, or after reaching it, as plaintiff claims, it left the track and was wrecked. The plaintiff claims that a certain safety switch, known as the " Cook switch," should have been used on No. 2 in connection with a trailing cross-over and set for such cross-over, and that the train, if this had been done, would have passed along No. 2 in safety notwithstanding the misplaced switch.

The defendant claims that the one in use was in fact a " Cook switch," properly constructed and in good working order at the time of the accident. The court left it to the jury to say whether or not defendant was negligent in maintaining a direct cross-over at this place.

The defendant's superintendent, and others said it was needed in the business and was proper and suitable for the use required. Evidence was given by plaintiff tending to show the contrary.

The plaintiff also claimed that other negligence existed on the part of defendant. That Schram, the switchman, was an improper and incompetent employee and was improperly retained in defendant's service.

The court charged the jury: " You are to take all the surroundings of this case as they existed at and just prior to this accident in 1880, and say whether at that time, with the means that this company had in its hands, with the knowledge it had of safety switches, and the knowledge it had of the different kinds of cross-covers, with the knowledge it then had of the liability to accident ; you are to consider what it was reasonable and proper that this company should be required to furnish as a means of safety against the occurring of accidents. Was a direct

cross-over, as they had it there, safe and proper, reasonably so, for this company to furnish at that time? Or, in order to have furnished a reasonably safe and proper cross-over, ought they to have had a trailing cross-over?" Also, "the question of fact is for you upon this question we are considering now, whether there was a failure at that time and immediately prior to this accident to furnish reasonably safe and proper road-bed, track and appliances at the point of this accident." Also, "if the cross-over had been a trailing one and the Cook switch there in use, would the train still have been derailed and the accident occurred? If it would, notwithstanding a trailing cross-over was there, then there is no right of action. But if a trailing cross-over had been there and then the train would have gone over in safety, why then you may find that the failure of the defendant to put a trailing cross-over there where the direct now is, was the cause of the accident; that in the absence of that neglect on the part of the company the accident would not have occurred."

The court was requested to charge "that the defendant had the right to assume that the train in question would pass through St. Johnsville on the usual track, and that its switches would be properly closed by its employees, and that it was not bound to provide escapes from that track to the south track as a guard to its servants possible neglect of duty, and that it was one of the risks taken by the plaintiff in his employment and continuing in defendant's service." This request was refused and an exception was taken by defendant.

The court was requested to charge, viz.: "That whether the employee knows or not that the best and safest kind of appliances are not used, still by entering upon a hazardous employment he assumes any risk resulting from ordinary structures used by his employer in carrying on its business and proper for that purpose."

The court replied: "I cannot charge in that language. I have charged upon that subject, and I leave it as I have already charged." Exception to the refusal and to the charge as made. The defendant requested the court to charge "that proper switches do not mean the latest and most improved kind."

The court replied, viz., "I charge that they do not necessarily mean the latest and most improved." There was an exception to

the refusal and to the modification. The defendant requested the court to charge, viz., " and that the company were not bound to use the Point switch or the Cook switch in the place of the Wharton switch or any other switch that they had in use."

The court replied, viz., " I leave it as a question of fact for the jury as to whether it was necessary in order to furnish a reasonably safe and proper road-bed, track and structure at this point where the Wharton switch was, to use any one or more of these switches. I leave it to the jury, and do not hold that they are bound to or that they are not." An exception was taken to the refusal and to the charge as given. The defendant requested a charge " that the defendant was not bound to furnish a switch which would safely conduct the train leaving track No. 2 to and upon track No. 1 in case the switchman negligently left the switch open on No. 2."

The court replied : " I leave that question to the jury. I do not charge that they were bound to." An exception was taken to the refusal and also " to the leaving of that question to the jury." Later on the defendant requested the court to charge " that the defendant was not bound to furnish a switch which would safely conduct the train leaving track No. 2 to and upon track No. 1 in case the switchman negligently left the switch open on No. 2."

The court then replied : " I think I will charge that, that it was not bound to. I will charge that."

*William G. Tracy,* for the appellant.

*Louis Marshall,* for the respondent.

HARDIN, P. J. :

When the plaintiff was injured on May 10, 1880, he was in the employ of the defendant as a brakeman upon an express train approaching St. Johnsville from the .east at 5.03 P. M., and it was not expected that the train would stop at that station, but the engineer failed to look and discover by the signal given by the target that there was an open switch near the station and to apply his brakes and stop the train. Schram, the switchman, had left the switch open. The train was derailed and the plaintiff injured.

It was apparent, at the trial, that the engineer and Schram were negligent, but the court told the jury that the plaintiff could not

recover, as he was a co-servant, if their negligence *solely* caused the injury. But he allowed other inquiries to be made as to whether the defendant had not itself been guilty of negligence, and the jury to find that the accident "would not have occurred if it had not been for the negligence of the defendant itself." (*Cone* v. *D. L. and W. R. R. Co.*, 81 N. Y., 206.) The switch which was left open by Schram had been in use for the purpose of passing trains from the north side of track No. 2, on which plaintiff's train was running westwardly, to the southerly side of track No. 2. It had served the purpose for which it was designed and safely carried trains across; for all the ordinary and usual purposes it had proved and appeared to be an adequate "instrumentality."

The court left it to the jury to say whether it was a proper and suitable instrumentality, and whether it was not the duty of the company to have a different one, one that would serve the purpose of meeting all exigencies brought about by the negligence of two employees of the defendant, who were co-servants of the plaintiff. Primarily the negligence of the engineer, and proximately the negligence of Schram, the switchman, in leaving the switch open, carried the train off of the track No. 2 and produced the derailment which injured the plaintiff.

If the stringent exaction of the rule which defendant is under in regard to passengers were applicable, the theory of the plaintiff might be proper. (*Smith* v. *N. Y. and Harlem R. R. Co.*, 19 N. Y., 127; *Hegeman* v. *The Western R. R. Co.*, 16 Barb., 353; S. C., affirmed, 3 Kern. [13 N. Y.], 9.) But a different rule obtains when the injured party is an employee, who, by his contract of employment, takes upon himself the risks caused by the negligence of his co-employees, and the usual risks incident to the hazardous employment in which he engages.

The pivotal question upon this branch of the case turns upon the solution of the question as to whether the defendant was negligent in not providing a safety switch, a trailing switch, or such a contrivance, in addition to the ordinary cross-over, as would guard against the exigency which came about by reason of the neglect of the engineer and Schram, the switchman. That question seems to be determined adverse to the plaintiff by the case of *Salters* v. *Delaware and Hudson Company* (3 Hun, 338). It was said in that

case that " a railroad company is not bound to employ mechanical appliances to protect one servant from injuries liable to result from the negligence of another."

The negligence asserted was the omission of the defendant to have a target switch, and LANDON, J., said: "The switch was not open in consequence of any defect in its construction or for want of proper repair. It was an adequate and sufficient switch so far as the adjustment of the tracks to each other was concerned, and that seemed to be the chief office of a switch. It was a common switch." In that case it was held error to leave it to a jury to say whether defendant was not guilty of negligence "for not getting a target switch." Apparently the court, in the case before us, went beyond the rules laid down in that and other adjudged cases in the charge as given and the refusals made.

Appellant's learned counsel cites us to *Smith* v. *New York and Harlem Railroad Company* (19 N. Y., 133), but it does not apply. SELDEN, J., said: "As between the deceased and the defendants no such relation as that of master and servant existed. The question between them, therefore, is the same as if the deceased had been a passenger upon the train to which the accident occurred." That case followed the rule laid down in *Hegeman* v. *The Western Railroad Company* (16 Barb., 353) and affirmed in 3 Kernan, to the effect that " all inventions and improvements known" to defendant which will contribute materially " to the safety of their passengers, whenever the *utility* of such improvement has been thoroughly tested and demonstrated," must be used. (*Smith* v. *R. R. Co.*, *supra*, 133.)

The case of *Kirkpatrick* v. *Railroad Company* (79 N. Y., 240), was one where the engine in use was defective, and by reason of the defect the explosion took place which killed the foreman, whose representative brought suit. Nor does *Pantzar* v. *Tilly Foster Company* (99 N. Y., 368) apply, as that was a case where a dangerous overhanging rock fell and caused an injury, and was clearly a case of want of ordinary care and prudence on the part of the master. *Stringham* v. *Stewart* (100 N. Y., 516), was a case of a dangerous and defective machine, or an elevator, which fell for want of proper safety appliances while being operated by the plaintiff. *Probst* v. *Delemater* (100 N. Y., 266), was a case where a cable was

used to haul in connection with a derrick and there was an injury, and the jury found that the cable was not safe and secure, and there was no evidence of any care in selecting the cable and a verdict was, therefore, sustained in favor of plaintiff.

In *Ellis* v. *The New York, L. E. and W. Railroad Company* (95 N. Y., 546), the buffers were defective and failed to perform the duty which they were provided for, and, therefore, a recovery was sustained. That case was distinguished by Danforth, J., from *Salters* v. *Delaware and Hudson Company* (*supra*). Employers are not bound to insure against accidents; "in the case of employees they are only obliged to provide appliances which are safe so long as used without negligence; the employee takes the risk of danger from negligence of his co-employee." (*Burke* v. *Witherbee*, 98 N. Y., 562; *Rummell* v. *Dillworth*, 3 Eastern Rep., 820; *Salters* v. *Delaware and Hudson Company*, *supra*; *Piper* v. *Railroad Company*, 1 T. & Cook, 290.)

In the case last cited Boardman, J., remarked, viz.: "If a common switch is properly cared for it is as safe as any other." (See, also, *Bajus* v. *S., B. and N. Y. R. R. Co.*, 25, Weekly Dig., 5; *Randall* v. *B. and O. R. R. Co.*, 109 U. S., 478; *Sammon* v. *The N. Y. and Harlem R. R. Co.*, 62 N. Y., 255; *Gage* v. *D., L. and W. R. R. Co.*, 14 Hun, 447.) Between employer and employee the law does not require the safest appliances or instruments, nor does it fix a liability upon the employer " for the failure to discard " those which are not safest for every exceptional exigency. (Thomp. on Neg., 983.)

It may not be left to the jury to say what switches, what patented article or contrivance, shall be used by a railroad company in order to escape liability from injury to an employee caused by the negligence of a co employee.

A new trial should be ordered.

BOARDMAN and FOLLETT, J. J., concurred.

Judgment and order reversed and a new trial ordered with costs to abide the event.